Maston DAVIS, Appellant,

v.

Antoinette C. BREITHAUPT et vir et al., Appellees.

No. 11366.

Court of Civil Appeals of Texas.

Austin.

Feb. 23, 1966.

Rehearing Denied March 16, 1966.

E. W. Patteson, Horace Duncan, Gonzales, Edwin P. Slater, Luling, for appellant.

Clemens, Knight, Weiss & Spencer, Edward R. Finck, Jr., San Antonio, for appellees.

PHILLIPS, Justice.

This case is before us on an instructed verdict.

The suit was in trespass to try title in which Antoinette C. Breithaupt and others,

the record title holders to the land in question, were the plaintiffs below and Maston Davis, the adverse claimant to the land in question, was the defendant.

The land in controversy is the Frank Shannon Survey lying in Gonzales and Caldwell Counties, Texas, and is approximately 160 acres.

Davis, the appellant here, filed a general denial, a plea of not guilty and affirmatively plead the statute of limitations. Art. 5510, Vernon's Ann.Civ.St.

Prior to the time that evidence was introduced appellant filed a motion to open and conclude.

In this motion appellant alleged that the property which is the subject of this controversy is "in the Frank Shannon 160 acre Pre-emption * * * and is the land surveyed by L. H. Burchard, appointed surveyor in the matter." In this motion, appellant admitted that the plaintiffs, appellees here, were the record owners to the disputed land.

The motion to open and conclude was granted and after defendant had rested his case, the appellees made a motion for an instructed verdict for title and possession of the premises as described in their pleadings. The court granted the motion and judgment was entered in favor of appellees.

We reverse and remand this case for trial.

Appellant is before us on three points of error. These points, briefed together, are the error of the trial court in instructing the jury to return a verdict for appellees because there was ample probative evidence of adverse possession on the part of the Davises to submit the case to the jury; the error of the trial court in instructing the jury to return a verdict for appellees because there was evidence of probative force that the Davises did claim the land in controversy as being their own; the error of the trial court's instructed ver-

dict because appellant did present evidence of probative force sufficient to raise issues of fact for the determination of the jury.

Appellant's evidence disclosed that J. E. J. Davis, the father of appellant, owned land and had his home adjacent to the land in controversy. There was a fence erected on three sides of the disputed land. The fourth side was open to a tract of Davis property which had a fence around it. This adjoining Davis tract had fences around three sides of it connecting onto the fences that surrounded the land in controversy on three sides. Consequently, both tracts were completely enclosed by one single and continuous expanse of fencing.

About sixty acres of the land in controversy was adapted to cultivation. The rest was used for grazing. Appellant's father, J. E. J. Davis, was a farmer and rancher and there is evidence that he had used the land in controversy at various times for farming and grazing from 1906 until his death somewhere in the 1940's.

Plaintiff contends that irrespective of whether his father had matured a limitation title to the property, he himself had secured title thereto through his adverse possession of the land since the death of his father. Appellant presented testimony as to the nature of his own possession and dominion of the land, however we do not deem it necessary to go into this evidence here for the hereinafter described reasons.

By partition deed dated April 29, 1946, appellant, his brother Jeff and other heirs of J. E. J. Davis divided the real property of J. E. J. Davis among them. This deed referred to all of the property of J. E. J. Davis. This deed does not convey the disputed tract. In describing the lands conveyed to the appellant certain boundaries of the disputed tract are referred to as being boundaries of the lands so conveyed. Under this deed, appellant received the Nelson Taylor Survey and the J. E. J. Davis Survey. These tracts are to the west and south of the land in controversy. Appel-

lant, his brother, and others signed this deed.

Appellant testified that he thought the disputed tract was conveyed to him by this partition deed until the year 1962 when Mr. Burchard, a surveyor, came on the property.

Davis was asked the following questions concerning this land and his use thereof:

"Q Mr. Davis, you were not trying to take anyone else's land were you?

A Just hold what I had.
THE COURT: Answer the question yes or no, Mr. Davis.

A Well. no, no.

Q So you didn't intend to take any land that belonged to somebody else?

A I believe I said no."

Appellant Davis also gave the following testimony concerning this same matter:

"Q When you first learned about this land was when Mr. Burchard's surveyor that the court finally appointed to make a survey of this land came on this land at my request, was'nt it?

A And I asked them to get out.

Q And that was in 1962?

A That is right.

Q And up to that time you thought that the property was in that deed, didn't you?

A Well, what else should I?

Q So you were not trying to take somebody else's land, were you?

A I want what is mine.

Q Mr. Davis, you didn't intend to take anybody else's property, did you?

A No."

The question of whether Maston Davis secured a limitation title in himself is controlled by Orlando v. Moore, Tex.Civ.App., 274 S.W.2d 86, writ ref., n. r. e.

█ It is well settled that the intention of the possessor of land to claim it as his own is an essential element of adverse possession and in the absence of such intention the possessor cannot mature a limitation title to land belonging to another. See 2 Tex.Jur.2d, Sec. 89, and particularly cases cited in Note 18 thereof.

Orlando v. Moore was an action in trespass to try title brought by plaintiffs, record owners, to recover land. The defendant plead the Ten Year Statute of Limitations. The Court held that the evidence was sufficient to show possession for the statutory period in the defendant and Mrs. Lott, his predecessor in title. However, Mrs. Lott testified that during the time she had possession of the land it was never her intention to claim any land not actually belonging to her or gained by accretion to her land. She further testified that it had never been her desire or intention to claim adversely to any right or title to the land of plaintiff's predecessor in title. The Court noted that all of her testimony as well as the written provisions in her deed of conveyance to the claimant-defendant was consistent with her clear statement that it was never her desire or intention to claim adversely to any right or title of the plaintiff's predecessor. The Court of Civil Appeals reversed and rendered a judgment for the claimant-defendant based upon a jury verdict.

We quote the following from the Court's opinion in this case:

"Many cases from Texas and other jurisdictions are cited in 97 A.L.R. pp. 21–27, in support of the following statement: 'The great weight of authority is to the effect that, where one of two adjacent land owners extends his fence, through mere inadvertence or ignorance of the location of the true boundary line, so as

to embrace within his enclosure lands belonging to his neighbor, with no intention of claiming such extended area, but with the intention of claiming adversely only to the true boundary line, wherever it may be, his possession of such extended area is not adverse or hostile to the true owner.'

\*   \*   \*   \*   \*   \*

Art. 5515 of Vernon's Tex.Civ.Stats. defines adverse possession as 'an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another.' Intention of the possessor of land to claim it as his or her own is an essential element of adverse possession and in the absence of such intention the possessor cannot mature a limitation title to land belonging to another. 2 Tex.Jur. p. 127, Sec. 67, and authorities. While intention to claim land may or may not be inferred from circumstances in most cases, we need not speculate or indulge in inferences in the case here under consideration as to what Mrs. Lott's intention was with respect to any of the 'made land' because she testified without any dispute that she did not intend at any time to claim any land not actually belonging to her or gained by accretion to her land. Consequently, we hold that the evidence in this case did not raise defendant's plea of limitation as a fact issue for the jury."

█ We have a similar situation here. Appellant testified that he thought the disputed tract was in the partition deed. He also testified that it was never his intention to take anyone else's land. We hold that appellant judicially admitted that he did not possess the intent necessary to ripen a limitation title during the time that he had the disputed property in his possession. See Griffin v. Superior Insurance Co., 161 Tex. 195, 338 S.W.2d 415, for the prerequisites of judicial admissions.

The partition deed, which appellant signed along with the other heirs of his

deceased father, was, under appellant's testimony, intended to cover all of the property of his deceased father. The disputed tract in question is not included in such deed as a part of any conveyance to him or to anyone else. To the contrary, the disputed land is mentioned several times in this deed as a boundary of certain of the lands that were conveyed to the appellant. Further, by appellant's own testimony it is apparent that his possession of the land in dispute was due to the fact that he was under the impression that this land had been conveyed to him in the abovementioned partition deed. Thus appellant lacked the sufficient intent to hold the land in question "under a claim of right inconsistent with and hostile to the claim of another." See Art. 5515, V.A.C.S. See Thompson v. Moor, Tex.Com.App., 14 S.W.2d 803.

As we point out later, there is a distinct possibility that J. E. J. Davis matured a limitation title to the land in question. Should this be the case, appellant would have inherited an interest in the land as a tenant in common with other heirs. There is no evidence here that he has been holding adversely to his co-tenant or co-tenants.

■ We deem it necessary to reverse and remand this case for trial for the reason that there is ample evidence that J. E. J. Davis exerted a dominion over the land in question that could well have matured a limitation title in himself during the 35 or 40 years that he farmed the land, grazed it with his cattle, gathered fruit, cut timber, maintained the fences and in general used the land openly and notoriously in such a manner as to demonstrate to anyone interested that he claimed it as his own. See 2 Tex.Jur.2d, Sec. 60, p. 127.

Should J. E. J. Davis have ripened a limitation title, there is no question but that this passed to his heirs. Salinas v. Gutierrez, Tex.Civ.App., 341 S.W.2d 558, writ ref., n. r. e. Such a title would have passed to his heirs irrespective of what the heirs thought they had inherited.

■ Appellees contend that appellant cannot claim to have inherited any title through his father as he has not proved the absence of a will, or, in other words, negated the possibility that his father left a will disposing of his property to someone other than appellant. We cannot agree with this contention. If there had been a will, the burden was on the appellees to prove this fact. The presumption is that J. E. J. Davis died intestate, 26A C.J.S. Descent and Distribution § 81 a, page 719.

■ Nor do we agree with appellee's contention that appellant has failed to sufficiently describe the land that he claims through adverse possession. Appellees described the land by metes and bounds in their petition. In his answer, appellant stated that the land in question was the same land described by appellees in their petition. In appellant's motion to open and close which was granted by the court, appellant described the land as being in the Frank Shannon 160 acre Pre-emption Abstract No. 508 situated in Gonzales and Caldwell Counties, Texas and containing 162.735 acres of land, more or less. The land in question is all of the Frank Shannon 160 Pre-emption which contains 162.735 acres of land, more or less. Under these circumstances, the fact that appellant used the word "in" the Frank Shannon Survey rather than "the" Frank Shannon Survey does not render the description inadequate. The acreage mentioned is specific. It is identical with the surveyed acreage of the Frank Shannon Survey, is identical with the amount of acreage described by the appellees, consequently could be located on the ground from appellant's pleadings with no difficulty whatsoever.

The judgment of the trial court is reversed and this cause is remanded for trial.

Reversed and remanded.