Maston DAVIS, Appellant,

v.

Antoinette C. BREITHAUPT et vir, et al., Appellees.

No. 11590.

Court of Civil Appeals of Texas.

Austin.

April 10, 1968.

Rehearing Denied May 1, 1968.

E. W. Patteson, Gonzales, Mitchell, Gilbert & McLean, Arthur Mitchell, Phillip W. Gilbert, Austin, for appellant.

Clemens, Knight, Weiss & Spencer, Edward R. Finck, Jr., San Antonio, for appellees.

PHILLIPS, Chief Justice.

This is a trespass to try title case brought by the holders of the record title, appellees herein, against appellant who claimed title to the land in question through the adverse possession thereof by his father J. E. J. Davis.

The case was tried before a jury in the court below and judgment was entered upon the jury's verdict that appellees have

and recover from the appellant the title and possession of the land.

We affirm.

Appellant is before this Court on seven points of error, the first being that the finding of the jury in response to special issue No. 1 is so against the overwhelming weight and preponderance of the evidence adduced at the trial as to be clearly wrong.

We overrule this point.

This case has been before us once before, Davis v. Breithaupt, 400 S.W.2d 390 (Tex.Civ.App.1966, writ ref'd n. r. e.), wherein we held that appellant himself could not claim limitation title under his own possession after his father J. E. J. Davis had died, because appellant admitted that he had never intended to take anyone elses' land and that his possession and ownership of the land in question came to him through a certain partition deed of no moment here.

In the case at bar, appellant attempted to prove that his father had acquired a limitation title to the land in question at the time of his death, the title having passed to appellant through the laws of descent and distribution, coupled with a deed to him from all other interested heirs.

The only evidence before us sufficient to raise the issue as to whether J. E. J. Davis acquired title to the land in question by adverse possession came from appellant and his son who were vitally interested in the outcome of this lawsuit. Appellant's remaining witness was an elderly woman whose statements were hazy, equivocal and of doubtful materiality.

Appellant attempted to show that his father used the land in question from 1915 to 1946, that the use was uninterrupted, that the use consisted of farming the property each year, running cattle thereon and fencing the property. He also testified to other acts of dominion on the part of his father over the property that constituted evidence of possession hostile to that of the record owner. There is no need, for the purposes of this opinion, to delineate this evidence in detail. Suffice to say that had these facts been proven sufficiently for the jury to have believed them, appellant could have made his case, however, this was not the result.

■ The evidence preponderates in support of the jury's verdict. There were discrepancies in appellant's testimony as to whether five acres of the land in question were cultivated or whether forty to fifty acres were cultivated over the period claimed. Appellant testified that there were two stock tanks on the land in question from 1916 to 1946 and that each was made by his father. However at a former trial of this same case in June of 1965, appellant testified that he could not remember stock tanks on the land during the alleged period of adverse possession. Although he denied giving such testimony at the former trial, a portion of the transcript of the testimony was read into evidence showing his inconsistency.

There is evidence that appellant's son told a witness that the Clemens' heirs owned the land in question and that he wanted to purchase this land.

There is no evidence that J. E. J. Davis ever rendered or paid taxes on any part of the land in question. Inventories of property from the county tax office were signed by J. E. J. Davis for the years 1939, 1940, 1943, 1944 and 1945 and reflect that he swore to "a complete list of all taxable property owned * * * by me in this county on the first day of each respective year." No part of the land in question is mentioned in any of these inventories although other tracts of land owned by J. E. J. Davis in the same county are mentioned.

Assessor's abstracts from the county tax office for the years 1919 through 1946 showed rendition of this land by appellees or their predecessors in title.

After the death of J. E. J. Davis, appellant and all of his brothers and sisters signed a partition deed in which *all* of his father's property was divided. This deed does not include the land in question; however, it does refer to this land in several places as a boundary to certain tracts of land therein conveyed.

In March of 1944 an oil and gas lease was executed on behalf of the record title holders to the land in question to one F. H. Scott. In February of 1944, J. E. J. Davis and his wife executed and delivered an oil and gas lease to F. H. Scott. This lease ignores the land in question with the exception of referring to it as a boundary.

Appellees' predecessor in title acquired the property in March, 1906. From February, 1906 through March of the same year J. E. J. Davis wrote appellees' predecessor letters from which the jury could have believed that J. E. J. Davis recognized title in the record title holder of that time. These letters inquired about purchasing the property and others stated that Davis would aid the record title holders in securing a tenant for the property.

Appellant admitted testifying at the former trial of the case that the property in question was never completely enclosed by a fence. He also admitted that these first fences were built before he was born and that he did not know who built them.

A certificate of redemption was introduced into evidence showing that in 1915 one of appellees' predecessors in title redeemed and paid off the delinquent taxes for the year 1907. A certificate from the county tax assessor was introduced showing that appellees and their predecessors in title had paid all state and county taxes for the year 1966 and for all prior years.

Consequently, there is no reason for us to disturb the jury's finding in this regard.

Appellant's second point of error is that of the court in sustaining the objection of the appellees to, and instructing the jury to disregard, the testimony of Mary L. Smith to the effect that the property in question was known as the land of J. E. J. Davis from the time she was six years old because such testimony was directly related to the issue of the notoriety of the claim of J. E. J. Davis to the lands in question.

We overrule this point.

Appellant's witness, Mary Smith, said she first knew J. E. J. Davis in 1904; that J. E. J. Davis lived east from her home about one and one-half to two miles; that she was partly familiar with the land on the Davis place; that she was familiar to a certain extent with the land in question; that she went over the land in question to visit neighbors; and she guessed it was this tract of land that J. E. J. Davis gave her and her family permission to cross.

She was asked if she saw cattle on the Shannon survey as she passed across it and answered affirmatively. She was asked whose cattle these were and she said that they belong to J. E. J. Davis.

The Statement of Facts shows that the following then transpired:

"Q Whom did you see working the cattle from 1904 until J. E. J. Davis—

A Will you repeat the question, please?

Q Who was working those cattle?

A Well, I couldn't just say who was working them, but they were—

THE COURT: Just a minute.

MR. PATTERSON: Let her finish.

THE COURT: You can finish your answer.

A When I was about 6 they were branding for Mr. Davis and we called that his tract of land.

MR. FINK: We object to what 'we called,' Your Honor.

THE COURT: Objection sustained.

MR. FINK: And request that the jury be instructed to disregard it.

THE COURT: The jury will disregard the testimony of the witness as to what 'we called the land.'

Q Did you ever see J. E. J. Davis doing any work on the Shannon survey?

A Well, I guess, seemed like I might have passed through there, I don't know whether I could say that."

That portion of the witness's answer to which objection was made: " * * * we called that his tract of land." was clearly unresponsive to the question asked the witness. The witness was asked who was working these cattle. At one point, she said she just couldn't say who was working them and did not complete her answer. She then stated that when she was about 6 "they" were branding for Mr. Davis and gratuitously added the statement to which the objection was made.

She had actually already completed an answer to the question by saying that she couldn't say who was working the cattle. Her further answer was an explanation that "they" were branding for Mr. Davis. Actually, this latter answer is not responsive to the question.

In 62 Texas Jurisprudence 2d, Witnesses, Section 169, the following statement is made:

"Error may not be predicated on the exclusion of testimony that is not responsive to the question asked."

Cruse v. Daniels, 293 S.W.2d 616 (Tex. Civ.App. Amarillo 1956, n. r. e.). Also see Turner v. Hodges' Estate,. 219 S.W.2d 522 (Tex.Civ.App. Fort Worth 1949, writ ref'd n. r. e.).

■ Here, the witness had already answered the question as to who was working the cattle. Her additional statement was a gratuitous and voluntary statement on her part and was not called for by the question. Thus under the rule of Cruse it was properly stricken.

■ Nor is the statement, "we called that his tract of land" admissible under the reputation exception to the hearsay rule as evidence of this character must be general, concurrent, and certain as to the subject matter. It must be reputation and not individual assertion. Maddox v. Dayton Lumber Co., 188 S.W. 958 (Tex.Civ. App. Beaumont 1916, no writ). There is no showing that the "we" used by the witness referred to anyone other than herself or the members of her immediate family.

Appellant's point of error number three is that of the court in instructing the jury that the testimony of the appellant, Maston Davis, as to his actions between 1915 and 1946 should not be considered by the jury to show adverse possession of his father, J. E. J. Davis, because such instruction constituted a comment on the weight of the evidence, and improperly restricted appellant from showing his father's perfection of limitation title through appellant's act as his father's tenant.

We overrule this point.

■ In reviewing this entire record we find that appellant on several occasions stated "we cut it with a saw on the base of a tractor; we picked plums and persimmons; we set in posts; we put in pieces of wire." In several other places he stated " * * * did work on the fence ourselves; when came a big rain we had to fix water gaps." The court instructed the jury not to consider this evidence. This evidence was admissible to show possession of J. E. J. Davis through his son, as his agent or tenant. However under the state of this record as a whole, we cannot say that this error amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an im-

proper judgment in the case. Tex.R.Civ.P. 434. Should this evidence have been allowed, the preponderance of the evidence is still against the appellant's claim and in all probability the same result would have been reached. The error was harmless.

Points four, five, six and seven are briefed together. Points four, five and six are: the error of the court in admitting appellees' exhibits of inventories of the properties of appellant, Maston Davis in connection with their rendition for tax purposes to the Waelder Independent School District, Gonzales County, and Caldwell County, because such tax renditions were irrelevant to any issue of the trial, and their admission into evidence was prejudicial to appellant; the error of the court in admitting into evidence exhibits of appellant's inventories of property, rendered for tax purposes by the appellant to the Waelder Independent School District, Gonzales County and Caldwell County, for years later than 1946, in conjunction with the trial court's instruction to the jury that the jury was to consider the tax renditions since the death of J. E. J. Davis for the purpose of impeaching the testimony of appellant, because such exhibits were irrelevant to any issue in the case, were prejudicial to appellant, and the instruction given by the court in connection with their admission constituted a comment on the weight of the evidence, adverse to appellant; the error of the court in admitting into evidence the patent and deed forming the initial part of appellees' record chain of title to the land in question, the exhibit of the will of Kathinka Clemens, the exhibit of the affidavit of heirship of Emma Schaeffer, and the exhibit of the release from the Texas Company to E. W. Clemens, dated in 1949, because the appellant had stipulated that the appellees held record title to the property in question, and such exhibits were therefore irrelevant to any issue in the trial, and their admission into evidence placed undue emphasis upon the record title of the appellees, which was prejudicial to appellant. Point seven is the error of the trial court in admitting into evidence the Original Answer of the appellant and the First Amended Original Answer of the appellant, which pleadings were superseded by the second Amended Original Answer, for the stated purpose of impeaching appellant, because the admission of such pleadings into evidence, for such purpose, constituted an improper comment on the weight of the evidence by the trial court, and because such admissions were irrelevant and inflammatory and prejudicial to the appellant.

We overrule these points.

■ The trial court did not err in admitting the inventories and tax renditions of the properties of the appellant because these showed a position inconsistent with that which he took at the trial of the case. In addition, this evidence was relevant to impeach the testimony of appellant that he took over the disputed tract after the death of his father and that he always paid his taxes.

At the trial of this case, appellant testified, "I have always paid my taxes." The inventories complained of showed no rendition or payment of taxes by appellant on the land in controversy. The trial court limited this evidence solely for the purpose of impeaching appellant's testimony and appellant made no objection to any of these instructions. Evidence of conduct by a party to a lawsuit which is inconsistent with his present position may be introduced in evidence against the party as an admission. Texas General Indemnity Co. v. Scott, 152 Tex. 1, 253 S.W.2d 651, (Tex. 1952); Cheshire v. Dow Chemical Co., 319 S.W.2d 358 (Tex.Civ.App. Waco 1958, writ ref'd n. r. e.). The jury was entitled to be informed that after the filing of this lawsuit, appellant had sworn that he had put all of his property on the tax rolls without including the property which he now seeks to recover in this lawsuit.

■ With reference to appellant's sixth point of error, the trial court did not err

in admitting evidence of record title because this was relevant to the affirmative defenses of incapacity on the part of William Clemens, Jr. (appellees' predecessor in title), military service by appellee, Chester Schaeffer, and to show when appellees' predecessor, Herman Clemens, acquired title.

These defensive claims of appellees were with respect to the insanity of their predecessor in title, William Clemens, Jr. and the Federal law which bars the application of the statute of limitation to people in the active military service. Tex. Rev.Civ.Stat.Ann. art. 5518 applies to the former; Title 50, App. U.S.C.A. Sec. 525 to the latter. Further, these defenses were embodied in special issues submitted to the jury without objection.

■ The original instruments were further relevant to show when the title vested in Herman Clemens so as to explain to the jury the relevancy of the letters from J. E. J. Davis to Herman Clemens in January and March of 1906. These letters were referred to earlier in this opinion. It should be noted that appellant stipulated that record title was in appellees only.

■ We also hold that the trial court did not err in admitting the release from the Texas Company to E. W. Clemens, guardian of the estate of William Clemens, Jr. as this was relevant to show no adverse claim by J. E. J. Davis to the property before us. As stated above, J. E. J. Davis had also entered into a lease agreement with Texaco on property he owned, referring to the property in question only by references to boundary. Also, any evidence of leasing on the part of appellees was certainly competent to show that they had continued to exercise dominion and control over their property.

■ The trial court properly admitted the abandoned pleadings of appellant for the reason that they were inconsistent with his present position. They were relevant to show a motive on his part to change the testimony he gave at a former trial, where he claimed adverse possession in his own right (which would have given him title to the whole premises unburdened by the rights of the other heirs of J. E. J. Davis); and his position in the case at bar where he claims under the adverse possession of his father.

In Gillette Motor Transport Co. v. Whitfield, 186 S.W.2d 90 (Tex.Civ.App. Fort Worth 1945, writ ref'd n. r. e.) the court stated that abandoned pleadings were admissible as admissions against interest and might be used for the purpose of impeachment. Also, see Kirk v. Head, 137 Tex. 44, 152 S.W.2d 726, (Tex.1941).

Thus the pleadings were relevant to show the inconsistency, mentioned above, wherein appellant, at the former trial, testified that he did not remember any stock tanks being on the property up until the time his father died, and his testimony in the case at bar wherein he testified that his father built the stock tanks.

The judgment of the trial court is affirmed.

Affirmed.