## MASON v. HOOD. (No. 9526.)

(Court of Civil Appeals of Texas. Fort Worth. March 12, 1921. Rehearing Denied April 23, 1921.)

1. **Deeds** ⟐179—**Delivery of unrecorded deed to grantor by third person without grantee's knowledge or consent insufficient to pass title.**

The redelivery of an unrecorded deed to grantor by a third party without grantee's knowledge or consent *held* insufficient to reinvest grantor with title; such delivery being insufficient unless both parties intended at the time of delivery that title should pass.

2. **Partnership** ⟐125—**Partner's delivery of copartner's deed to grantor without copartner's consent not binding on copartner.**

The redelivery to grantor of an unrecorded deed by third person without grantee's knowledge or consent was insufficient to reinvest grantor with title, even if the third person was a copartner of grantee, where the land was grantee's individual property; the act of the copartner not being binding on grantee.

3. **Trespass to try title** ⟐59—**Defendant pleading not guilty may also ask for reimbursement for improvements, taxes, and purchase money.**

In trespass to try title, the defendant may plead not guilty, and in addition may appeal to the equitable powers of the court for reimbursement for improvements made, taxes paid, and purchase money, in the event that judgment should be rendered against him as to the title to the property.

4. **Trespass to try title** ⟐47(3)—**Defendant not entitled to reimbursement from owner for purchase money paid to unauthorized third person.**

In trespass to try title by owner of land against defendant who had purchased it from third person who had not been authorized by the owner to sell the land, the defendant was not entitled to recover from the owner the purchase price paid to such third person.

5. **Trespass to try title** ⟐60—**Defendant not entitled to reimbursement for taxes where owner had paid taxes for same year.**

In trespass to try title by owner of land against defendant who had purchased the land

from third person who had had no authority from owner to sell, the defendant could not recover taxes paid for certain year, where the owner had also paid the taxes for such year.

Appeal from District Court, Stephens County; W. R. Ely, Judge.

Action by A. J. Mason against J. B. Hood and another. Judgment for named defendant, and plaintiff appeals. Reversed and rendered.

John F. Evans, of Breckenridge, and J. W. Marshall, of Dallas, for appellant.

John W. Hill, of Breckenridge, for appellee.

BUCK, J. In this cause the plaintiff, A. J. Mason, sued the defendants, J. B. Hood and Tom Mashburn, in form of trespass to try title for the possession of a certain lot in the town of Breckenridge, Stephens ·county. Mashburn answered by a disclaimer and was discharged. The defendant pleaded not guilty, and as a special plea addressed to the equitable powers of the court pleaded that A. J. Mason, I. H. Bilbrey, and S. E. Copeland constituted a partnership about the 1st day .of February, 1919, and that the defendant contracted with this firm to repurchase a lot which had .been sold to the firm by the defendant; that it was agreed upon that the purchase price of the lot was $300, and that defendant paid this amount to the firm, and received the deed which he had theretofore executed and given to the firm, but which had not been recorded; that immediately upon receiving said deed he made valuable improvements on the lot, and paid the taxes for 1918. The defendant specially alleged this plea, not· as admission in any way of his want of title to the land in controversy, but that in case the judgment of the court should be for plaintiff that he might have judgment over against plaintiff for his purchase money and his improvements made in good faith.

From a judgment in favor of defendant in a trial upon special issues before a jury, plaintiff has appealed.

Appellant's first assignment is addressed to the failure of the court to peremptorily instruct the jury in favor of the plaintiff. The evidence showed that in 1916 plaintiff and I. H. Bilbrey and S. E. Copeland were canvassing the state of Oklahoma for a patent churn; that while so engaged the de-·fendant Hood traded for a house and lot in Granite, Okl., belonging to said parties, or at least to Mason and Bilbrey; that in part payment for this house and lot the defendant made a deed to the lot in Breckenridge, over which this controversy is involved; that the deed to the lot was .made to Mason, Bilbrey receiving as his part of the purchase price certain cash paid by Hood; that Mason left the deed in the bank at Granite in care of A. M. Spears, cashier. He testified that he never did give any one authority to go to the bank and get the deed, and that he never sold or conveyed the property to defendant; that in February, 1919, he was living at the town of Duncan, Okl., and that Mr. Bilbrey came to Duncan, and stopped at his house, and while there asked him what he had ever done with this lot at Breckenridge; that he told Bilbrey that he had done nothing with it; that Bilbrey asked him what he would take for it, and that he said that he did not want to sell it at that time; that Bilbrey offered him $125 for the lot, but that he told him that his (plaintiff's) wife was in the hospital at that time, and that when he (Bilbrey) got back to Granite to tell Mr. Spears to send his deed to him; that later on Bilbrey called him up over the telephone and asked him if he was going to let him have that lot, and he told him "no;" that Bilbrey said, "I have played the devil then; I let Hood have that deed, but I can get it back from him." He further testified that he never authorized Bilbrey to get the deed out of the bank or to sell the lot to Hood or any one else.

Bilbrey testified that at the time he and Mason traded with Hood, in 1916, the title to the lot in controversy was made to plaintiff, and that he (Bilbrey) took other property as his part of the deal;· that he had never had any interest in the lot in question; that when he got the deed from the bank at Granite he was trying to purchase it from Mason; that he had gone down to Duncan and had offered Mason $125 for the lot, which he agreed to take; that Mason told him when he got back to Granite to tell Mr. Spears that he wanted his deed and other papers, and for Bilbrey to send this deed from Hood to him; that he would make a deed to Bilbrey when his wife got out of the hospital; that he had no power of attorney to convey the lot in question and had no authority from Mason to convey the lot or to deliver the deed to Hood; that Mason knew nothing about Hood paying him $300, and that Hood knew that he· could not convey the title; that when he learned that Mr. Mason was not willing to sell he went to Mr. Hood and offered him his money back, but he refused it.

Mr. Spears testified that the deed in question was left with him at the bank by Mason, or Bilbrey and Mason, and that some three years later he delivered it to Bilbrey upon the statement that they had sold the lot.

Hood testified to the negotiations between him and Bilbrey, and that Bilbrey said he was going to Duncan soon and would see Mason, and did so; that upon his return Bilbrey got the deed out of the bank and delivered it to him, and he paid him $300.

[1] This in substance is the testimony

which was before the trial court and upon which the verdict and judgment rests. We do not believe the evidence is sufficient to sustain a judgment for the defendant, and that the court should have given the peremptory instruction for plaintiff as requested. The delivery of an unrecorded deed by the grantee to the grantor does not pass the title, unless both parties intended at the time of delivery that such title should pass. In Dycus v. Hart, 2 Tex. Civ. App. 354, 21 S. W. 299, this court said:

"Appellees contend that, even under the common source of title with which they are sought to be affected, there is an outstanding legal title in Levi Scott which will prevent a recovery by plaintiff. If when Levi Scott returned the deed to his brother John L. Scott, in February, 1889, it was the intention of the two that John L. Scott should be thereby reinvested with title to the land, we are of opinion that the former would be estopped from claiming the property. The existence of this estoppel, however, depends upon the existence of the intention specified. Unless that intention existed, the surrender of the deed could not operate to divest the title out of Levi Scott, and revest it in his brother.' Devl. Deeds, §§ 303-305."

Certainly the title would not pass when the delivery was made by some other party than the grantee, and without the grantee's knowledge or consent.

[2] While the jury found that the partnership relation between Mason and Bilbrey existed up to February, 1919, when this deed was delivered by Bilbrey to Hood, yet that finding is not supported by the evidence, and, even though it were supported by the testimony, the evidence is practically uncontradicted that at the time the deed was made by Hood to Mason it was the intention and purpose of the grantor and the grantee, as well as Bilbrey, that the title to the lot should be and become Mason's, and that he held said title thereafter as individual property. Hence, even though Bilbrey and Mason could be held partners at the time of the redelivery of the deed by Bilbrey to Hood, yet Bilbrey's act, done without the knowledge or consent of Mason, in so delivering the deed, would not be binding upon plaintiff. Hence we sustain plaintiff's assignment directed to the failure of the court to peremptorily instruct the jury to find for plaintiff as against defendant.

[3] Complaint is made in the third assignment of the failure of the court to confine defendant's defense to the title specially set up by him in his answer. We understand that the authorities hold that, where one pleads a special title, he is limited to such title, and thereby waives his plea of not guilty. Custard v. Musgrove, 47 Tex. 217. But in this case the defendant did not plead any title in himself, except under his

plea of not guilty, but he appealed to the equitable powers of the court that in case judgment should be returned against him for the title to the property he have judgment against plaintiff for said improvements made, taxes paid, and the purchase money. This, as we understand the authorities, he can do, and yet rely on his plea of not guilty. Sayers v. Texas Land & Mortg. Co., 78 Tex. 244, 14 S. W. 578; Morris v. Housley, 34 S. W. 659; Fuller v. O'Neil, 69 Tex. 349, 6 S. W. 181, 5 Am. St. Rep. 59.

[4, 5] But in the present case the defendant Hood does not show himself entitled to such equitable relief. He did not pay the purchase price to Mason, who owned the lot, but to Bilbrey, and he must look to Bilbrey for the return of his money. While he built a fence on the lot at the cost of some $12.50, and paid the taxes for the year 1918, yet Mason seems to have paid the taxes for the same year.

For the reasons given, the judgment below will be reversed, and here rendered for the appellant.