**Emily WHITE et al., Appellants,**

**v.**

**Price DANIEL, Appellee.**

No. 6748.

Court of Civil Appeals of Texas.

Beaumont.

May 6, 1965.

Thos. A. Wheat, Price Daniel, Liberty, for appellee.

STEPHENSON, Justice.

This is a trespass to try title suit to recover title to 100 acres of land in Liberty County. Trial was by jury which failed to reach a verdict. The trial court discharged the jury and granted plaintiff's motion for instructed verdict.

Price Daniel, the plaintiff, claimed record title to the property. Plaintiff acquired title to the north 40 acres by deed dated April 15, 1935, and acquired title to the south 60 acres by deed dated May 15, 1935. From 1901 until 1935 record title to these two tracts had not been vested in the same person. Defendants, the heirs and legatees of Joe Cormier, deceased, claimed title under the ten year statute of limitation. The parties will be referred to here as they were in the trial court.

If there was evidence of probative force raising the necessary issues of fact under the ten year statute of limitation, the trial court erred in instructing a verdict for plaintiff. Such evidence must include peaceable and adverse possession, cultivating, using or enjoying the same for any period of ten continuous years, under a claim of ownership.

Joseph Cormier, defendants' ancestor, obtained record title to a 50 acre tract in 1891 and to a 139 acre tract in 1896. These two tracts lie immediately east of the 100 acres in controversy and there is no conflict between the field notes calling for the joint boundary line.

Arthur Brazier, a witness called by defendants, testified as follows:

He ran stock on the 100 acres involved in this suit with permission from Joseph Cormier; Cotton and corn were raised on a part of the land; He kept cows, horses and stock on the land for 15 or 20 years after Joseph Cormier died; Wood was cut from the land for posts and for the schools

Aloysius Wickliff, Houston, W. J. Durham, Dallas, Thos. H. Dent, Galveston, for appellants.

in town; The Cormiers were claiming the land as far back as 1905; The land was under fence beginning in 1917 for 16 to 20 years, went down for a couple of years and had to be repaired; A truck potato was cultivated by the Walters on the north side of the tract involved.

Emily White, a defendant, testified Joseph Cormier and his heirs were claiming this land back in 1896.

Sim Paul Cormier, a defendant, testified that wood was provided for the Catholic school for 30 years; that there were wood cutting parties and that many times post splitting was done by members of the family.

Willie Arceneaux testified: That he was 62 years old and that all his days he knew the land as belonging to the Cormier family; that timber was cut from this land from 1910 to 1928; that he cut timber with permission from the Cormier family.

The Cormier family executed an oil and gas lease in 1926 covering a portion of the land in controversy.

Hazel Walters Bernard testified: That her family cultivated a garden on the northern part of this land from 1929 to 1942, about half an acre in size; that a picket fence was put around the garden; that Cyrus Cormier gave her mother permission to use this garden; that Cyrus Cormier farmed about 200 to 300 yards from the Walters garden; that Joseph Cormier and his family cut timber on the property as long as she could remember.

Melton Cormier testified: that 30 or 35 acres of land were cultivated; that he helped build a rail fence, which was hog-proof, around this land; that crops were grown on this land; that several persons ran cattle on the land in controversy with permission from the Cormier family.

Alvin Chargois testified: that his father leased this property for pasture under an oral lease from the Mitchell and Cormier families after 1946; that this lease provided that the Cormiers put up a fence to keep the cattle off the road; that he continued leasing after his father's death; that the Cormiers cut timber off of the property to burn for fuel.

Amos Arceneaux testified he was 75 years old and never knew of anyone claiming the land but Joseph Cormier and his heirs, who cut timber year after year.

June 30, 1917, a judgment was filed, confirming a partition of a tract of land, including the land in controversy, among the Cormier heirs. The property had been partitioned by commissioners.

Gregory White paid school taxes on 98¾ acres in the survey in which this land is located in the year 1925. Taxes were paid by Emily White on 20²⁄₁₀ acres in 1917, and 21 acres in 1919. Willie Mitchell paid state and county taxes on 100 acres in 1920, 1924 and 1927.

■ Inasmuch as Joseph Cormier and his heirs, held possession of their own premises under deed east of the land in controversy, it is presumed that their possession only extended to the boundaries of their deed. In order, therefore, to establish adverse possession of the adjoining tract it was necessary for them to have actual possession of such additional land of such a character as of itself will give notice of an exclusive adverse possession and mature it into title after the statutory period. Harmon v. Overton Refining Co., 130 Tex. 365, 109 S.W.2d 457.

It is undisputed that none of the defendants nor their ancestor, Joe Cormier, ever lived on the property in controversy and no buildings were ever placed on the property. The only evidence of use was through cultivation, timber cutting and grazing.

■ The only evidence as to cultivation came from the witnesses, Arthur Brazier, Emily White and Melton Cormier. Arthur Brazier testified that Joe Cormier farmed the land in controversy, raising cot-

ton and corn, before his death in 1918. However, this testimony does not show how many years this farming operation was carried on, which years the farming was carried on, and whether the farming was for a period of ten consecutive years. Emily White testified that they cultivated 30 or 40 acres of the land in controversy and Melton Cormier said it was 30 to 35 acres. However, neither of them testified as to how many years this was done, which years it was done, whether on the 40 or 60 acre tracts involved, nor whether it was for a period of ten consecutive years. The only other testimony about cultivation was in reference to the garden plot of Cedonia Walters on the north end of the tract in controversy and once again no one testified that this was maintained for any ten consecutive years. Defendants failed to describe the garden spot in their pleadings, and the evidence does not show specifically where the garden spot was located. A judgment could not be rendered by the court for the defendants under these circumstances. Coleman v. Waddell, 151 Tex. 337, 249 S.W.2d 912. There was no evidence that the land was cultivated for a period of time sufficient to mature title under the ten year statute of limitation.

█ The use of land for timber purposes may under certain circumstances amount to nothing more than evidence as to claim of ownership, and under other circumstances amount to actual possession. The courts of this state have given particular emphasis to the frequency of the cutting of the timber, the amount of the timber cut and whether there is some other form of possession of the land at the same time. The evidence in this case shows that the defendants, and others with their permission cut timber, for fence posts, that there were wood cutting parties to provide wood for the schools in Liberty, and that wood was cut from the property to burn for fuel. The evidence showed this timber was cut year after year, one witness testifying that wood was cut for thirty years.

There was no evidence of a general cutting of the timber at any time. There was no evidence as to the quantity of timber cut at any one time, nor as to where on the land the timber was cut, that is, whether it was cut from both the 40 acre tract and the 60 acre tract each year. The evidence did not show actual possession of the land throughout the required statutory period through continuous cutting of the timber. Sneed v. Hamilton, Tex.Civ.App., 299 S.W. 2d 769.

We now consider the evidence in reference to use of the land by defendants for grazing the only other use covered by the testimony. Arthur Brazier testified he ran stock on this land with permission from Joseph Cormier and that he kept cows, horses and stock on the land for 15 or 20 years after Joseph Cormier died. Melton Cormier testified that several persons ran cattle on this land with permission from the Cormier family. Alvin Chargois testified that his father leased this land under an oral lease from the Cormiers after 1946 for pasture, and that he continued leasing after his father's death.

█ According to the witness, Arthur Brazier, the land in controversy was enclosed by a fence beginning in 1917, and remained under fence for 16 to 20 years until it went down for a couple of years and had to be repaired. However, there is no evidence that Joseph Cormier or any of the defendants built a fence that touched the land in controversy at any point. Of the total amount of about 439 acres under fence, the Cormiers had record title to 189 acres of land. Further, the evidence showed that about 75% of the fence enclosing the larger tract of land, which includes the 100 acres in controversy, is made up of fences owned by other persons not connected with this suit, and used by them for the purpose of fencing their own land. The fencing and grazing, as a matter of law, was not sufficient to support title by limitation. This case is controlled by the law as set forth in Orsborn v. Deep Rock

Oil Corp., 153 Tex. 281, 267 S.W.2d 781, as follows:

"When the use relied upon to support the statute is grazing, there must be also at the same time sufficient enclosure, such *as to give evidence that the land was designedly enclosed* and to show the assertion of claim hostile to the true owner. Vineyard v. Brundrett [17 Tex.Civ.App. 147], 42 S.W. 232, 235. The ordinary case for the acquisition of title by adverse possession, when the use is grazing, is one in which the person claiming title under the statute has built a fence or fences enclosing the land and has maintained the enclosure and continuously used the land for grazing during the statutory period. Such construction of fences and use of the land for grazing afford evidence of hostile claim. Petitioner would bring this case within that general rule. We agree, however, with the decision of the Court of Civil Appeals that the facts of this case take it out of that general rule and bring it under the principle announced and applied in the following cases, that when the disputed tract of land has been casually or incidentally enclosed with other land, especially when, as here, such other land is held by the possessor under deed, the incidental enclosure and the occasional grazing of the disputed tract by cattle straying from the title land *will not amount to such adverse and hostile possession and use as will support the statute of limitations.* (cases cited)"

It also must be noted in this case that a public road lay within the enclosure, as well as a large tract of land owned by a third person to which defendants made no claim.

When the claimed uses are considered together, they fail to complement one another so as to constitute continuous and exclusive possession of the land. W. T. Carter &

Brother v. Ruth, Tex.Civ.App., 275 S.W.2d 126.

 Defendants contend the trial court erred in defining a word in the court's charge. In view of the disposition of this case on appeal, this point becomes immaterial. If the court properly instructed a verdict for plaintiff, anything contained in the court's charge could not constitute reversible error.

 Defendants further contend the trial court erred in not permitting them to reopen the case and introduce additional testimony. This motion was made at the time defendants filed their answer to plaintiff's motion for an instructed verdict, and at a time the jury had already been discharged. Rule 270, Texas Rules of Civil Procedure, provides that the court may permit additional evidence to be offered. This matter was within the sound discretion of the trial judge. We find no abuse of his discretion.

Affirmed.

PARKER, J., not sitting.