Clinton **CUNNINGHAM** et al., Appellants,

v.

A. J. **EASTHAM** et al., Appellees.

No. 15723.

Court of Civil Appeals of Texas, Houston (1st Dist.).

March 18, 1971.

Rehearing Denied April 8, 1971.

McNeal & Thrash, William W. McNeal, Alvin, for appellants.

Davis & Kee, Leland B. Kee, Angleton, Eastham & Meyer; Sam Dawkins, Jr., Houston, for appellees.

COLEMAN, Justice.

This is a suit in trespass to try title involving certain land located in Brazoria County, Texas. Appellants have appealed from a take nothing judgment rendered after a trial to the court without a jury. The judgment is affirmed.

Appellants claimed a record title to the tract of land. In addition to pleading not guilty and a general denial, the appellees plead the various statutes of limitation. After a hearing on a motion for summary judgment filed by appellees, the judge presiding entered an order denying the motion for summary judgment. In this order, however, the court recited that after having interrogated counsel and having examined the pleadings and summary judgment evidence before it, in accordance with Rule 166–A(d), Texas Rules of Civil Procedure, it appeared to the court that the affidavits and documentary evidence filed by appellants established, prima facie, appellants' record title. The court then ordered that the documents theretofore filed established, prima facie, appellants' record title and that appellants would not be required to introduce any additional evidence upon the trial of the cause in order to make a prima facie case showing good record title in appellants. The court further stated that the material facts which were actually and in good faith controverted consisted of " * * * those facts which may be established upon the introduction of evidence

concerning defendants' claim of limitation title or of a claim of superior title in defendants and any other facts which may tend to contradict the genuineness of the documents in plaintiffs' chain of title heretofore filed." The order was approved as to form and substance by the attorney for appellees.

At the trial on the merits before a different judge, appellants tendered as their first exhibit the order entered by the court on the motion for summary judgment. Appellees' attorney then stated to the court that it was his position that the documentary evidence which supported that order was not sufficient to show good record title to the property in the plaintiffs and he urged the court to set the order aside. The order was admitted.

Appellants offered the motion for summary judgment including the attached exhibits. Appellees' attorney said that he had substantial objections to some of the exhibits and desired to object to them individually. The court stated that he would hold his ruling in abeyance until the other documentary evidence was introduced at which time the objections could be made. Appellants then introduced two affidavits filed by appellees in opposition to the motion for summary judgment and rested subject to the ruling on the admissibility of the motion for summary judgment.

Appellants' attorney also stated to the court that he was offering the motion for summary judgment to show what the court ruled on at the time and to show the affidavits as being a part of the motion establishing heirship. He stated that he did not feel that the order entered on the motion could be re-examined. After further discussion the motion was admitted into evidence and the appellants rested.

At this point the attorney for appellees dictated into the record a motion for judgment based on the failure of appellants to offer into evidence "proof of a continuing chain of title from the sovereignty of the soil into the Plaintiffs." Claimed defects in the chain of title as shown by appellants' summary judgment evidence were pointed out. It was then argued that the order on motion for summary judgment was interlocutory and subject to being set aside; that it was erroneous and should be set aside. Appellees then moved the court to set aside the order and enter judgment that plaintiffs take nothing. The court stated that he would hold his ruling on the motion for judgment in abeyance.

After a recess appellees were permitted to, and did, make specific objections to each instrument attached to the motion for summary judgment purporting to evidence appellants' chain of title, and renewed their motion for judgment. Appellants then asked, and were granted, leave to call another witness.

The attorney representing appellees at the hearing on summary judgment was then called and testified that he did not remember exactly what was said at the hearing, but that he probably told the court that he had found three chains of title to the land and that the instruments presented in connection with the motions probably represented one of those chains. He confirmed that he approved the order entered by the court as to substance and form. The court then stated that he was still holding its ruling in abeyance and that the defendants should proceed with their evidence.

The record contains no further request for a ruling by either party. At the conclusion of appellees' case both parties rested. Thereafter the court entered a judgment reciting that the court found that the plaintiffs should take nothing. It ordered that title to and possession of the land be "divested out of the plaintiffs * * * and * * * be vested in the defendants * * *"

Findings of fact and conclusions of law were requested by appellants and filed by the court. Finding of Fact No. 1 was that title to the land in controversy was originally granted by the sovereign to Denil H.

M. Hunter and that the evidence in the case is insufficient to establish a conveyance of such title by him; or the fact and date of his death; whether he died testate or intestate; or the names of those persons who survived him and their relationship to him. After making other findings of fact sufficient to sustain title by limitations in appellees, the court filed his conclusions of law, the first of which was that appellants failed to connect their claim of record title with the sovereign.

The judgment was entered on August 12, 1970. The findings of fact and conclusions of law were filed on September 8, 1970. On September 10, 1970, appellants filed a motion to vacate judgment.

The motion contained allegations that the finding of fact and conclusion of law relating to record title had the effect of overruling the previous interlocutory order; that they had no notice of the court's intention to overrule the order; that appellees made no formal motion for said order to be overruled; that appellants, therefore, had no opportunity to introduce any additional evidence of their record title. The motion was denied and no points are presented on appeal complaining of this action.

Appellants contend that "the trial court erred in overruling the prior interlocutory order of the Court * * * by entering Finding of Fact 1 and Conclusion of Law 1 after judgment, in the absence of formal motion by appellees prior to judgment that same be set aside." They argue that if the court had set aside the order prior to trial, they would have had the opportunity to introduce other evidence concerning their record title. They contend that by overruling the prior order without notice to them, the trial court erred. They contend that the proper rule of law is that once a "partial" summary judgment has been granted, such action should be final on the issues involved, subject to appeal after the whole case has been disposed of, and subject to the action of the court on a

timely motion to set aside the previous order.

This Court discussed Rule 166–A(d), T.R.C.P., in City of Houston v. Socony Mobil Oil Company, 421 S.W.2d 427 (Tex. Civ.App.—Houston 1967, err. ref. n. r. e.), where we said:

"It is the clear purport of this rule to make the issues determined on the motion for summary judgment final. Once an interlocutory summary judgment is entered, the issues decided cannot be further litigated *unless the judgment is set aside* by the trial court, or unless the summary judgment is reversed on appeal * * *" (emphasis added)

■ It is not required that the interlocutory judgment be set aside prior to the trial on the merits although for obvious reasons this would be the preferable practice. The trial court has inherent jurisdiction over the court's judgments prior to the date when they become final as provided in Rule 329b, T.R.C.P., and can alter, modify, or set them aside on the motion of a party or on his own motion. A. F. Jones & Sons v. Republic Supply Co., 151 Tex. 90, 246 S.W.2d 853 (1952); Callahan v. Staples, 139 Tex. 8, 161 S.W.2d 489 (1942).

■ If the trial court elects to re-examine the evidence on which the partial summary judgment was based, and concludes that it does not support the judgment and that the judgment would probably be reversed on appeal, it would be proper for him to set aside the judgment on his own motion. Sneed v. Martin, 292 S.W.2d 891 (Tex. Civ.App.—Dallas 1956).

■ If the pre-trial order is set aside after the announcements of ready for trial, the party adversely affected by this action in all likelihood would be entitled to delay or a continuance on a proper showing of surprise and unavailability of material evidence.

Here the order was never set aside by announcement in open court or by a formal

order. However the trial court had taken the motion to set aside under advisement, which fact was known to appellants. Appellees brought the motion to the attention of the court at the beginning of the trial and after the appellants had rested. At no time did appellants directly request a ruling on the motion. The judgment did not recite that the pre-trial order was set aside.

■ As a matter of logic the pre-trial order and the judgment are not necessarily in conflict. The judge might have concluded that despite the fact that appellants had a good record title, the evidence sustained one or more of the pleas of limitation title in appellees. There is nothing in the record leading to an obvious conclusion that the trial judge set aside the pre-trial order, other than Finding of Fact No. 1, and Conclusion of Law No. 1 filed after judgment. We conclude that the trial court did not effectively set aside the pre-trial order. Fenley v. Ogletree, 277 S.W. 2d 135, 149 (Tex.Civ.App.—Beaumont 1955, writ ref., n. r. e.); Fugitt v. Slay, 329 S.W.2d 358 (Tex.Civ.App.—Dallas 1959, writ dism'd); Pettit v. Engelking, 260 S.W.2d 613 (Tex.Civ.App.—San Antonio 1953, writ ref., n. r. e.); Thomas v. Shult, 436 S.W.2d 194 (Tex.Civ.App.—Houston, 1st Dist., 1968); Dickerson v. Mack Financial Corporation, 452 S.W.2d 552 (Tex.Civ.App.—Houston, 1st Dist., 1970, writ ref., n. r. e.).

The effect of this order was to eliminate the necessity for appellants to introduce evidence to establish record title in themselves. Appellees did not introduce any evidence to establish a superior record title. No competent evidence was presented at the trial on the question of record title. The trial court's Finding of Fact No. 1 is immaterial since the issue of record title was determined by the pre-trial order, and affords no support to his Conclusion of Law No. 1, which cannot support the judgment because it is in conflict with the pre-trial order. If we considered that the finding of fact and conclusion of law set aside the pre-trial order after the entry of judgment, and was a sufficient record entry, we would consider such action to be an abuse of discretion. West Texas Equipment Co. v. Walker, 417 S.W.2d 864 (Tex.Civ.App.—Amarillo 1967, writ ref., n. r. e.).

The trial court made findings of fact which, if based upon competent evidence, properly support his conclusions of law that the defendants, A. J. Eastham and G. D. Scott, Jr., each have title to an undivided one-half interest in the land in controversy under the provisions of Articles 5509, 5510 and 5519, of the Vernon's Annotated Texas Revised Civil Statutes. Appellants have attacked these findings on the basis that they are supported by no evidence, and that they are contrary to the great weight and preponderance of the evidence. Appellants' principal argument is that appellees must rely on the grazing of cattle and horses for proof of use during the applicable limitation period. They contend that taking the evidence in its most favorable aspect for appellees, it establishes only that the tract of land in dispute was enclosed with other land by casual fencing, and thus as a matter of law will not support a finding of title by limitation.

In 1928 G. D. Scott, Sr., took possession of Lot 43 of the Walcott Pearland Subdivision in Brazoria County, Texas, the 18.39 acre tract of land involved in this action. In that year he began running cattle over several hundred acres of land including the land in dispute. While the land he was using was enclosed, none of the fences were erected by him in connection with his use of the land. No substantial improvements were constructed on any portion of the land used by Scott for grazing purposes prior to 1942.

■ When the use relied upon to acquire limitation title is grazing, there must be at the same time a sufficient enclosure as will give evidence that the land was designedly enclosed and that a claim hostile to the true owner is being asserted. Ors-

born v. Deep Rock Oil Corp., 267 S.W.2d 781 (Tex.1954).

"* * * Where the character of use of inclosed land by a claimant of adverse possession, is not such as to constitute of itself, an actual and visible appropriation of the land, it may be safely said that such use cannot be aided by a fence which casually created the inclosure, and to the construction of which fence neither the claimant of the adverse possession nor any person under whom he claims has contributed * * *" West Production Co. v. Kahanek, 132 Tex. 153, 121 S.W.2d 328 (1938).

In September, 1940, G. D. Scott deeded an undivided one-half interest in Lot 43, and certain other lots in the subdivision, to appellee A. J. Eastham. Thereafter he and Eastham continued in joint use and possession of the land until Scott conveyed it to his son, G. D. Scott, Jr., in 1947. His possession of the land was undisputed and peaceable until he was sued in the year 1940 by Schwefel and Dahlman. This suit was settled and a judgment was entered in February, 1941, whereby the plaintiffs recovered judgment for the title to and possession of certain of the lands within the enclosure used by Scott, and decreed that title to Lot 36 be vested in Scott, Sr., and Scott, Jr., and to Lot 44 be vested in Scott, Sr. The Scotts then built a fence along the west lines of Lots 36, 37, 38, 39 and 40 of the Walcott Pearland Subdivision, which, together with existing fences and Clear Creek, formed an enclosure including those lots and also Lots 41, 42, 43 and 44. About two years later Willaert bought Lot 42 and built a fence from Clear Creek to the Scott fence along the south line of Lots 37 and 43, leaving only Lots 36, 37, 43 and 44 within the Scott enclosure. Lot 37 was separated from the remainder of the land by fence for a time prior to 1953.

After Scott built the fence in 1942 he and Eastham claimed joint ownership of Lot 43 and used it jointly each year for grazing until 1947. Thereafter Eastham and Scott, Jr., used it for grazing until 1952. In that year they leased it to McCormick, who farmed it for rice. In 1953, 1954 and 1955, Nelson farmed the land to rice under a lease agreement with appellees. In 1956 Scott, Jr., put about twenty horses on the land and kept them there until 1961. Nelson also ran cattle on the land by agreement with Scott and Eastham. In 1962 Alexander leased the land and raised soy beans. Nelson grazed the land in 1963, farmed it to rice in 1964, and grazed it in 1965. Alexander farmed it in 1966, and Nelson farmed it to rice in 1967. Each year the land was used by Nelson and Alexander they paid rent to appellees. After 1951 anyone inspecting the land would see rice farming operations or evidence that rice farming had been conducted on the land. In 1953, after Nelson leased the land, he removed the fence between Lot 43 and Clear Creek. He owned the parcel of land located there and used it in his farming and grazing in connection with the land leased from appellees. Clear Creek was a stream of such width and depth as to turn cattle of ordinary disposition. The other fences were maintained by appellees. The property was rendered for taxes each year by appellees and the taxes were paid by them each year before delinquency from 1941 through 1967 with the exception of the years 1943 and 1944. Eastham and Scott, Jr., promptly recorded their deeds. After 1952 Lot 43 was enclosed with Lots 36, 47, 44 and the small tract owned by Nelson by the fence built by Willaert on the southeast, by the Scott fence on the southwest and by Clear Creek on the north. The enclosure contained about sixty acres. During the sixteen years immediately preceding the suit the land was in cultivation for eight years. There was testimony that on land never previously farmed to rice, it might be successfully raised for four years in succession, but that usually after about two years grass became too great a problem. The testimony was that the best practice was to raise rice one year and then to graze it close for

two years or more. Other crops are raised in the years between rice crops by some farmers. After 1952 there was a small canal and rice levees on the land.

Here there is evidence that about one-third of the fencing creating the enclosure was originally built by appellees' predecessor in title for the purpose of enclosing the land claimed by appellees, including Lot 43. During the years farming operations were not conducted, fifteen to twenty horses and an undefined number of cattle used the land for grazing. The land was of equal quality. The fences were kept in repair. The land was rendered for taxes and the taxes were paid before they became delinquent. Appellees were on the land under duly recorded deeds.

The appropriation of the land was of such character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupants. Appellees' possession of the land continued for more than ten years. It was an actual and visible appropriation of the land commenced and continued under a claim of right inconsistent with and hostile to the claim of appellants and all others. The adverse possession was open and notorious and manifested by such open and visible acts that knowledge on the part of the owner will be presumed. There is sufficient evidence to support the findings of the trial court that appellees have shown title by adverse possession under both the five and the ten year statutes of limitation. McDonnold v. Weinacht, Tex., 465 S.W.2d 136 (1971); Butler v. Hanson, 455 S.W.2d 942 (Tex. 1970); Sanders v. Worthington, 382 S.W. 2d 910 (Tex.1964); McKee v. Stewart, 139 Tex. 260, 162 S.W.2d 948 (1942); Holland v. Nance, 102 Tex. 177, 114 S.W. 346 (1908); Houston Oil Co. v. Village Mills Co., 241 S.W. 122, 135 (Tex.Com.App. 1922).

Affirmed.