James P. PARKER, M.D. and Ruth
B. Parker, Appellants,

v.

L.B. McGINNES and Dorothy
McGinnes, Appellees.

No. 01–89–00963–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 5, 1992.

Opinion on Second Motion for
Rehearing Dec. 3, 1992.

Joe Alfred Izen, Jr., Bellaire, L.T. Bradt, Houston, for appellants.

W.E. Verkin, Jr., Alvin, for appellees.

Before OLIVER–PARROTT, C.J., and O'CONNOR and WILSON, JJ.

## OPINION ON MOTION FOR REHEARING

O'CONNOR, Justice.

On January 31, 1991, this Court reversed the judgment of the trial court and rendered judgment that the appellants, James P. Parker, M.D. and his wife, Ruth B. Parker, recover title of and possession to the lands in controversy. The appellees, L.B. McGinnes and his wife, Dorothy McGinnes, filed a motion for rehearing. Before that motion was decided, two of the judges on the panel retired from the Court. A new panel was designated, and oral argument was ordered to enable the new panel to decide the motion for rehearing. We grant the motion for rehearing, withdraw our previous opinion dated January 31, 1991, and issue this in its stead. We reverse the judgment of the trial court, and render judgment that the appellants recover title to and possession of the lands.

This is a trespass-to-try-title action involving claims of adverse possession of lots 9 and 10 (the lots) based on the three, ten, and 25–year statutes of limitations. TEX. CIV.PRAC. & REM.CODE ANN. §§ 16.024 (Vernon 1986), 16.026 (Vernon 1986 & Supp. 1992), 16.028 (Vernon 1986). The lots are contiguous and consist of approximately 20 acres in the Gulf Coast Development Company, First South Subdivision of Algora Orchards, a subdivision in Galveston County, Texas. There were no improvements on the two lots, which were used for rice farming, cattle grazing, and hunting.

### History in the trial court

In September 1984, the Parkers brought this action against several persons, including the McGinneses, to establish title and right of possession to the lots. The McGinneses generally denied the allegations and later amended their answer asserting the Parkers' cause was barred by the three, five, 10, and 25–year statutes of limitations.

The trial court granted a partial summary judgment in favor of the Parkers on March 14, 1986, awarding them record title to and possession of the lots against all parties, except the McGinneses. With respect to the McGinneses, the Parkers were given title to and possession of the lots, "unless and until the Defendants L.B. McGinnes and wife, Dorothy C. McGinnes, having pleaded limitation title, have proved, with the certainty required by law, that they have ripened a title to or an interest in said land under one or more of the statutes of limitation...." The trial court realigned the parties, stating that in all further proceedings the burden of proof would be on the McGinneses to show any limitation, title, or interest pleaded by them and that the Parkers would occupy the position of defendants.

The Parkers amended their petition to allege that they had peaceable, continuous, and adverse possession of the lots for a period in excess of three years from the time the McGinneses' cause of action had accrued; that they (or those under whom they claimed) had peaceable, continuous, and adverse possession of the lots for a period in excess of five years from the time the McGinneses' cause of action had accrued and before it was filed; and that they (or those under whom they claimed) had peaceable and adverse possession of the lots for a period in excess of 10 years from the time the McGinneses' cause of action had accrued and before it was filed.

The case was tried to a jury, which found the McGinneses had peaceable, adverse, and continuous possession of the lots for a period of 10 years or more after 1943 until February 17, 1982,[1] and (either themselves or those under whom they claimed) for any period of 25 consecutive years between 1943 and February 17, 1982. The jury found that the Parkers did not hold peaceable and adverse possession of the lots for a continuous period of three years or longer before February 17, 1982.

The trial court denied the Parkers' motion for directed verdict and motion for judgment notwithstanding the verdict. The Parkers' filed a motion for a new trial, which was overruled by operation of law.

### Statement of Facts

While the parties disagree about how the law should be applied to the facts, there is little disagreement over the facts themselves.

Almost 50 years ago, Guy Moore leased the lots to R.T. Briscoe for growing rice. There were two rice leases covering the periods January 1, 1943 to December 31, 1947 and January 1, 1948 to December 31, 1953. Both leases were recorded. Virgil McGinnes, the brother of L.B. McGinnes, was in business with Briscoe. Virgil and L.B. grew rice on the lots for three or four years from 1943 until 1946 or 1947. Thereafter, L.B. farmed every third year, allowing the lots to lie fallow for the two years between. L.B. used the lots for grazing the years he did not farm, and he continued rice farming until 1964 or 1967.[2] After 1960, L.B. did not farm every three years because the U.S. government allotment program limited his production of rice. Also after 1960, if he was not using the lots for pasture, he would grow hay. The McGinneses did not enclose the lots.

On March 4, 1957, L.B. bought an undivided one-half interest in the lots from J.W. Stone. The deed was recorded on November 2, 1961. Stone had received his deed from Ernest Moore, the father of Guy Moore, in December 1956; it was recorded on January 3, 1957. On October 22, 1975, L.B. received a deed from Elsie Moore, the widow of Ernest, and her children, conveying the lots. The deed was recorded on January 22, 1976. From 1967 to 1974, Talmadge Permenter leased the lots from L.B. for grazing his horses and cattle. Permenter effectively enclosed the lots (along with other land) by putting a fence along their western boundaries. Other people also ran their cattle in the enclosed area until 1975. Several witnesses testified that they saw no rice farming from 1975 until 1981. L.B. tore down Permenter's fence in 1974. The next and the last time L.B. grew rice on the lots was in 1981 and 1984.

Dr. Parker purchased three lots adjacent to the lots in 1963. In 1974 he went into possession of the lots, and on September 14, 1975, he obtained a quitclaim deed from Permenter covering any interest Permenter might have in the lots. After a title search, Dr. Parker discovered the record owner was Arthur Lind. On November 17, 1977, Dr. Parker obtained a deed from Lind. Within a month after Permenter's fence had been torn down, Dr. Parker had a survey performed and enclosed the lots with a new fence.

Dr. Parker planted rye grass at least twice between 1974 and 1980 on the lots.

---

1. The parties stipulated that the first trespass-to-try-title lawsuit concerning the lots was filed in Galveston County on February 17, 1982. The action was brought by the McGinneses.

2. Virgil obtained a rice lease on the lots for the period January 1, 1966 through December 31, 1971 from Guy Moore's wife.

Only his cattle grazed the lots between 1974 and 1980. His fence was torn down in December 1980 or January 1981. A rice crop was planted (1981), but Dr. Parker reconstructed the fence. Between 1981 and 1984, Dr. Parker continued to use the lots for improved pasture and hay. His fence was torn down in 1984 and another rice crop was planted. The fence was not rebuilt, and no further rice was planted.

### The law on adverse possession

■ A person seeking to establish title to land by virtue of the statutes of limitations relating to adverse possession, under sections 16.024, 16.026, and 16.028, has the burden of proving every fact essential to that claim by a preponderance of the evidence. *Rhodes v. Cahill,* 802 S.W.2d 643, 645 (Tex.1990). Under the 25-year limitation statute, the claimant must hold the real property in adverse possession, under a recorded deed or other type of instrument purporting to convey title, in good faith, for 25 or more continuous years. *Smith v. Matthews,* 662 S.W.2d 150, 153 (Tex.App.—Fort Worth 1983, no writ); TEX. CIV.PRAC. & REM.CODE ANN. § 16.028(a) (Vernon 1986); *see Boyle v. Burk,* 749 S.W.2d 264, 267 (Tex.App.—Fort Worth 1988, writ denied). Adverse possession means an actual and visible appropriation of the land commenced and continued under a claim or right inconsistent with and hostile to the claim of another. TEX.CIV.PRAC. & REM. CODE ANN. § 16.021(1) (Vernon 1986); *Rhodes,* 802 S.W.2d at 645; *Smith,* 662 S.W.2d at 153. The adverse possession does not have to continue in the same person if there is privity of estate between each holder and his successor. TEX.CIV. PRAC. & REM.CODE ANN. § 16.023 (Vernon 1986); *Boyle,* 749 S.W.2d at 266. In such a case, the claimant may tack the successive interests together. *Boyle,* 749 S.W.2d at 266.

■ Under the 10-year limitation statute, the claimant must hold the real property in adverse possession and cultivate, use, or enjoy it for 10 or more continuous years. TEX.CIV.PRAC. & REM.CODE ANN. §§ 16.021(1) & (3), 16.026(a) (Vernon 1986); *see Rhodes,* 802 S.W.2d at 645 (an essential element of adverse possession is that the claimant's possession must be an actual and visible appropriation of the land for at least 10 consecutive years); *White v. Daniel,* 391 S.W.2d 176, 177 (Tex.Civ.App.—Beaumont 1965, writ ref'd n.r.e.) (evidence must include peaceable and adverse possession, cultivating, using, or enjoying the same for any period of 10 continuous years, under a claim of ownership).

■ When a claimant relies on grazing to acquire limitation title, the land must be enclosed to give evidence that it was designedly enclosed and that the claimant is asserting a claim hostile to the true owner. *Cunningham v. Eastham,* 465 S.W.2d 189, 193 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.), citing *Orsborn v. Deep Rock Oil Corp.,* 153 Tex. 281, 267 S.W.2d 781 (1954). In *Orsborn,* the Texas Supreme Court said:

> It is settled that limitation title cannot be acquired by grazing unenclosed land.... And it is of course true that title cannot be acquired merely by fencing land without grazing it or farming it or putting it to other use. When the use relied upon to support the statute is grazing, there must be also at the same time sufficient enclosure, such as to give evidence that the land was designedly enclosed and to show the assertion of claim hostile to the true owner.

*Id.* 267 S.W.2d at 785; *see also Rhodes,* 802 S.W.2d at 646.

Whether a non-grazing or mixed grazing and farming use is sufficient to acquire limitation title depends on the facts in each case. Some examples, including cases relied on by each party, are discussed below. In *Gandy v. Culpepper,* 528 S.W.2d 333, 336 (Tex.Civ.App.—Beaumont 1975, no writ), the court held there was no notice of exclusive adverse possession because the disputed land was in the center of a larger tract, was not separately fenced, the house was located at some distance from the land, and it was cultivated "more or less" with small patches to raise tomatoes, watermelons, corn, peanuts, and "things like that." In *Wiggins v. Houston Oil Co.,* 203 S.W.2d 252, 256 (Tex.Civ.App.—Beaumont 1947, writ ref'd n.r.e.), the court held the claim-

ant took sufficient adverse possession by annually cultivating the 160 acres with corn, cotton, sweet potatoes, and peas, even though the land was only partially fenced and the claimant did not reside there.

In *McCall v. Grogan–Cochran Lumber Co.*, 143 Tex. 490, 186 S.W.2d 677, 680 (1945), the court held the adverse claimants' possession and use of the land was sufficiently peaceable, open, notorious, and gave fair notice of the claim. In *McCall*, the predecessors of the claimants resided on the disputed land for 20 years, sold timber from the land, cultivated substantial portions of the land continuously for more than 10 years, and even though they did not fence the land, they marked its boundaries with "blazes, hacks and crosses on line and corner trees." *Id.* 186 S.W.2d at 678–80.

In *King v. Inwood North Associates*, 563 S.W.2d 309, 313 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ), the court held the evidence was sufficient to support the jury's finding of peaceable and adverse possession. In *King*, the claimant grew rice on the land in controversy every other year and grazed cattle in alternate years, the land was fenced as a unit with other land, the fence was kept in repair, a road and irrigation ditch were maintained along the land's edge, and "no trespassing" signs were placed along the perimeter. *Id.*

In *Davis v. Breithaupt*, 400 S.W.2d 390, 394 (Tex.Civ.App.—Austin 1966, writ ref'd n.r.e.), instead of reversing and rendering judgment for the appellant when the appellee failed to prove adverse possession, the court remanded the case for retrial because the father of the adverse claimant may have matured a limitation title in himself. The father had farmed the land, grazed cattle on it, cut timber, maintained the fence that enclosed his property and the land in dispute, and, in general, used the land "openly and notoriously," demonstrating that he claimed it for his own.

In *Cunningham*, this Court affirmed a judgment awarding title by adverse possession. We found the following facts showed the adverse possession was open, notorious, and manifested by such open and visible acts that knowledge on the part of the owner would be presumed: During the 16 years preceding the suit, the land was cultivated for rice for eight years; because grass became a problem after rice had been grown for four successive years, the best practice was to raise rice for one year and then to graze the land close for two or more years; however, after 1951, anyone inspecting the land would see rice farming operations or evidence that rice had been farmed; the land was enclosed and one-third of the fencing had been built by the predecessor of the adverse claimant; the adverse claimant maintained the fences; when farming was not conducted, 15 to 20 horses and an undefined number of cattle grazed there. *Cunningham*, 465 S.W.2d at 194–95.

In *Dunn v. Taylor*, 102 Tex. 80, 113 S.W. 265 (1908), the supreme court discussed the effect of breaks in the occupancy of the land claimed by adverse possession. The court found there was no continuous possession where intervals of possibly four, five, six, or 12 months elapsed between tenants and no other use of the land occurred, even though the land was enclosed. *Id.* 113 S.W. at 267. The court stated the cultivation, use, or enjoyment of the land was essential to the actual and visible appropriation that constitutes adverse possession. *Id.* 113 S.W. at 268.

In point of error one, the Parkers contend the evidence was legally insufficient to support a verdict for the McGinneses under the 10–year statute of limitations; in point of error two, they contend the evidence was factually insufficient. In point of error three, the Parkers assert the evidence was legally insufficient to support a verdict for the McGinneses under the 25–year statute of limitations; in point of error four, the Parkers assert the evidence was factually insufficient.

**The legal sufficiency challenges**

In reviewing legal insufficiency points, we consider only the evidence and inferences, when viewed in their most favorable light, that tend to support the finding. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988). Under this

test, we ignore all evidence and inferences that are contrary to the jury's finding. *Id.*

Under both the 10 and 25–year limitations statutes, the claimant must show that its adverse possession is actual, visible, and continuous for the appropriate term of years. The following is the evidence L.B. marshalls to support the jury's finding that he adversely possessed the lots under deed for 10 or 25 years:

> 1943: The McGinnes brothers had an oral rice lease for the land from Briscoe, who had a written lease from Moore.
>
> 1943 to 1946: Virgil McGinnes testified he and his brother grew rice on the lots.
>
> 1947 to 1948 or 1949 and every two years thereafter (for a two-year period) until 1967: L.B. McGinnes testified he grazed cattle on the lots. The lots were not fenced.
>
> 1948 or 1949 and every third year until 1967: L.B. McGinnes testified he grew rice on the lots.
>
> 1957: Moore transferred the lots by deed to Stone and the deed was recorded.
>
> 1957: L.B. acquired a deed to the lots from Stone.
>
> 1967 to 1974: T. Permenter leased the lots from L.B. McGinnes, enclosed them along with other tracts, and grazed horses and cattle there.

Under the 25–year limitation statute, L.B. was required to prove that he held the lots in adverse possession under a recorded deed that purported to convey title, for 25 or more continuous years. By tacking on the deeds from Moore to Stone and from Stone to L.B., L.B. met the 25–year recorded deed requirement: His predecessor in title, Moore, sold the land to Stone in 1956, which deed was recorded that same year; Stone then sold the land to L.B. in 1957. *Boyle,* 749 S.W.2d at 266.

■ L.B. failed, however, to prove that he was in adverse possession during that time. At best, L.B. proved that he and his brother cultivated the land sporadically, and when not cultivating the land, L.B. ran cattle on it. If the lots had been fenced, the combined use for cultivation and cattle ranching would have been sufficient to prove adverse possession. But, because this land was not fenced, L.B. was required to prove 25 years of continuous cultivation.

■ Under the 10–year limitation statute, L.B. was required to prove peaceable and adverse possession, cultivating, using, or enjoying the same for any period of 10 continuous years, under a claim of ownership. Again, L.B. did not prove a continuous 10–year period in which he either cultivated the land or enclosed it for grazing. L.B. proved that he cultivated the lots some years, and other years he grazed cattle on them. There was no actual and visible appropriation of the lots that would have given notice of claim of ownership to the true owner. *Rhodes,* 802 S.W.2d at 645; *White,* 391 S.W.2d at 177 (the claimed uses did not complement one another so as to constitute continuous and exclusive possession of the land).

Without the enclosure of grazing land, there is no notice to the record title holder of an adverse claim. *See Orsborn,* 267 S.W.2d at 785; *Cunningham,* 465 S.W.2d at 193. L.B. used the land much more for grazing than for rice growing. Without his enclosure of the lots, we find there was no evidence of L.B.'s adverse possession of the lots. Thus, we sustain the no evidence points challenging the jury's finding that L.B. held the land adversely under the 10 or 25–year statute.

### The factual sufficiency challenges

■ We also review the same findings under the factual sufficiency tests. Under this test, we review all the evidence, the evidence that supports the jury's finding and the evidence that conflicts with the jury's finding. In reviewing these points of error, we must uphold the finding unless we decide the finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *M.J. Sheridan & Son Co. v. Seminole Pipeline Co.,* 731 S.W.2d 620, 623 (Tex.App.—Houston [1st Dist.] 1987, no writ).

Virgil McGinnes conceded that when rice farming land lies fallow, vegetation grows up and after a year or two there is no evidence of any rice farming. L.B. testi-

fied that he may not have farmed every three years after 1960 because of the allotment program. Other witnesses testified they saw no rice farming on the lots during the 1960's. L.B. never enclosed the lots. Nor was he the only person grazing cattle there. Other witnesses testified they ran cattle there as well with neither the objection nor the approval of L.B. Even when Permenter enclosed the lots and other lots from 1967 to 1974, other people continued to run cattle and horses there.

■ Although letting the lots lie fallow is not fatal to proving continuous cultivation, when the lots became so overgrown with vegetation that no evidence of cultivation could be seen, the McGinneses failed to meet the requirement of open and notorious use. Under *Smith,* L.B.'s possession was not a visible and continuous appropriation of the land. *Smith,* 662 S.W.2d at 153.

On cross-examination, L.B. was asked

Q: It's your testimony, you correct me if I am wrong, that this land here was farmed along with all of the other land that was available, between 1943 and 1975, every three years?

A: Maybe not every three years. There come a time when the allotment moved in on us and we had to cut out different tracts that we couldn't farm it at all.

Q: Was it not farmed for a period of time consecutively for a period of ten to twelve years.

A: I doubt it. I quit farming in 1964.

As stated earlier, without the enclosure of grazing land, there is insufficient notice to the record title holder of an adverse claim. L.B. used the land much more for grazing than for rice growing. Without his enclosure of the lots, and because any signs of rice farming were quickly overgrown, we find there was factually insufficient evidence of L.B.'s adverse possession of the lots.

We sustain the appellants' points of error one and two, challenging the evidence to support the finding under the 10–year statute of limitation, and points of error three and four, to support a verdict for the McGinneses under the 25–year statute of limitations. Because of these rulings, we need not consider their remaining three points of error.

## OPINION ON SECOND MOTION FOR REHEARING

In their second motion for rehearing, the appellees, L.B. and Dorothy McGinnes, remind us that, in their first motion for rehearing, they had alternatively requested reimbursement for the ad valorem taxes they had paid, if this Court reversed the trial court judgment in their favor and rendered judgment that the appellants, the Parkers, recover title to and possession of the property.

In their pleading, the McGinneses asserted they paid taxes on the property, in good faith, under color of title, and while claiming to be the owners. They demanded reimbursement for taxes if the Parkers prevailed. The jury found the McGinneses had paid $300.84 in taxes to the Santa Fe Independent School District and $910.84 in taxes to Galveston County. The amount of the Galveston County taxes was supported by the testimony of a representative of the Galveston County tax office, redemption certificates, and copies of cancelled checks written by L.B. McGinnes. The checks and redemption certificates were dated 1981. The amount of the school taxes was shown by a copy of the cancelled check written by L.B. McGinnes in December 1981. These payments were made before this suit was filed. There is no evidence that the Parkers paid any ad valorem taxes on the property. Nor have the Parkers denied the McGinneses are entitled to reimbursement for the taxes paid.

■ The rule of law is that if a person in good faith and under a color of title, who claims to be the owner of real estate, pays taxes assessed thereon, and if his title is thereafter defeated, he is entitled to be reimbursed, assuming he has made such a plea before the trial court. *Davis v. First Nat'l Bank of Waco,* 139 Tex. 36, 161 S.W.2d 467, 473–74 (1942) (affirming *Davis v. First Nat'l Bank of Waco,* 145 S.W.2d 707, 712 (Tex.Civ.App.—Waco 1940)); *Mason v. Hood,* 230 S.W. 468, 470 (Tex.Civ.

App.—Fort Worth 1921, writ dism'd w.o.j.) (but defendant denied equitable relief because both parties appeared to have paid taxes); *Meador Bros. v. Hines,* 165 S.W. 915, 922 (Tex.Civ.App.—Amarillo 1914, writ ref'd); *see Fuller v. O'Neal,* 69 Tex. 349, 6 S.W. 181, 182 (1887) (if a defendant wishes to assert an independent equitable right not involved in the issue as to title directly in controversy, he must present facts by proper averment).

Accordingly, we render judgment that the appellees, L.B. McGinnes and Dorothy McGinnes, recover from the appellants, James P. Parker, M.D. and Ruth B. Parker, jointly and severally, the sum of $1,211.68 as reimbursement for the payment of property taxes.

We deny the appellees' second motion for rehearing.