**Annie M. KING et al., Appellants,**

v.

**INWOOD NORTH ASSOCIATES,
Appellee.**

**No. 17010.**

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Jan. 26, 1978.

Rehearing Denied Feb. 23, 1978.

Clark G. Thompson, Houston, for appellants.

Bracewell & Patterson, Ronald R. Scott, Houston, for appellee.

EVANS, Justice.

In this trespass to try title action, the sole issue was whether the plaintiffs held a limitation title to the land in controversy under the 10 year statute of limitation. Article 5510, Tex.Rev.Civ.Stat.Ann. Upon the jury's finding that the plaintiff had acquired title by peaceable and adverse possession for the requisite period of time, the trial court entered judgment for the plaintiff.

The land in controversy is a tract of 13.014 acres of land located as shown below. The defendants own the record title to the land indicated as the McHard-King 123 acre tract, which includes the 13.014 acres in dispute. The plaintiff owns the record title to the Broh 672.467 acre tract, which is located immediately east of the land in controversy. The west fenceline of the Broh Estate enclosure, which contains the land in controversy, is shown between the points D and F.

In response to the one special issue submitted, the jury found that the Broh Estate, under which the plaintiff claims title, in person or through its tenants, "held peaceable and adverse possession of the 13.-014 acres in controversy, cultivating, using, or enjoying the same" for a period of 10 consecutive years prior to October 4, 1974.

In their first four points of error, the appellants contend that the trial court erred in admitting the testimony of Ford Hubbard, Sr. and Herman Liere, who held leases from the Broh Estate, because the lease agreements did not include the land in controversy.

In 1944, Mr. Ford Hubbard, Sr. was employed as the agent of the Broh Estate to look after the Broh tract and to arrange for the leasing of the land. Mr. Hubbard testified that when he first became familiar with the land, there were fences on all lines and on both sides of West Montgomery Road where it crossed the property. The fences formed a complete enclosure and included the 13 acre tract in controversy. It was Mr. Hubbard's belief that these fences marked the boundaries of the Broh tract, and as agent for the Broh Estate, he claimed all lands within the fenced enclosure, including the 13 acre tract in dispute. From 1944 until 1953, the property was leased by the Broh Estate to a Mr. Warnecke for grazing purposes. In 1953, the Broh Estate was leased to Mr. Ford Hubbard, Jr., for agricultural purposes, and he subleased the land to Mr. Herman Liere for rice farming. The Hubbard lease agreement describes the leased premises by metes and bounds, locating the west line of the leasehold by a call for distance and a call for adjoinder with a tract off the west end of the survey. The parties are in agreement that the legal description in the plaintiff's deeds and leases do not include the 13 acre tract within their boundaries and that the dotted line (A–E) constitutes the western boundary of the premises described in the written instruments.

Mr. Liere testified that at the time he leased the land from the Broh Estate, he was told that the leased premises included everything to the west fence line, and he, therefore, made use of the 13.014 acres in dispute because he understood that it was included in his lease. Mr. Liere used the enclosure for rice farming and cattle grazing until 1964, and from then until 1968, he and his son-in-law, Alvin Rollins, operated the land together. Thereafter, Rollins leased the land from the Brohs until 1973.

It is the appellant's contention that the possession, occupancy and use of the tenants of the Broh Estate cannot be used as basis for the plaintiff's limitation claim because the lease descriptions do not include within their boundaries the tract of land in controversy. Arguing the applicability of the rule that a landowner in possession through a tenant is deemed to have possession only to the extent of the tenant's right of possession under the terms of the lease agreement, appellant cites as controlling authority: *Williams v. Fuerstenberg,* 23 S.W.2d 305, 306 (Tex.Com.App.1930, holding approved); *Niendorff v. Wood,* 149 S.W.2d 161, 164 (Tex.Civ.App.—Amarillo 1941, writ ref'd), and *Brownlee v. Landers,* 166 S.W.2d 734, 737 (Tex.Civ.App.—Amarillo 1942, no writ).

Each of the authorities relied upon by the appellant is a case where the evidence either indicated that the landlord had not authorized the tenant to occupy lands other than those described in the lease or where proof of such authority was lacking. In the case at bar, there is affirmative evidence that the parties believed and claimed the west boundary line of the leased premises to be the fence line running along the west line of the tract in controversy. Where an understanding exists between the landlord and tenant that the tenant will hold certain premises under the lease arrangement, the tenant's occupancy of such premises will constitute the landlord's possession, even though such premises are not covered by the legal description in the written lease. *Sanders v. Worthington,* 382 S.W.2d 910 (Tex.1964). The testimony of Mr. Ford Hubbard, Sr., as the agent and as a tenant of the Brohs, and the testimony of the Brohs' tenant, Mr. Liere, was admis-

sible to establish the extent of the parties' understanding as to the boundaries of the lands which were leased. The appellant's first three points of error are overruled.

The appellant's fourth, fifth and sixth points of error contend that the trial court erred in not submitting special issues with respect to the plaintiff's intent to claim the land in controversy and regarding the defendant's notice of such claim. Although appellant's brief contains no argument with respect to these points, there does appear in the transcript a refused special issue concerning the question of notice.

▮ The trial court's submitted issue contained all of the elements necessary to the establishment of title by peaceable and adverse possession under the 10 year statute of limitations, together with adequate explanatory instructions. *Viduarri v. Bruni,* 179 S.W.2d 818 (Tex.Civ.App.—San Antonio 1944, writ ref'd w. o. m.). The court did not err in refusing to submit the special issue requested by the defendants because the requested issue was merely a different shade or phase of the issue submitted. *Beauchamp v. Beauchamp,* 239 S.W.2d 191 (Tex.Civ.App.—Eastland 1951, writ ref'd n. r. e.); *Sterling v. Tarvin,* 456 S.W.2d 529 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n. r. e.).

In their remaining points of error, seven through eleven, the appellants raise "no evidence" questions, arguing that the jury's finding is without evidentiary support.

The record shows that from the year 1944 through 1973, the Broh Estate, through its agent and tenants, made continuous use of the land in controversy for agricultural and grazing purposes, using the land in dispute as a unit with the other land within its fenced enclosure. Although the evidence does not indicate who first constructed the west fence of the Broh enclosure, it is undisputed that tenants of the Broh Estate furnished the materials necessary to the repair of the fence to the lessee of the adjoining land who provided the labor. Mr. Liere testified that he grew rice on the enclosed land, including the tract in dispute, every other year for 8 years, and that dur-

ing the alternate years, he grazed cattle on the land. He maintained a road and an irrigation ditch along the west line of the property and grew rice within 4 feet of the west fence line. In 1953, Liere drilled an irrigation well on the 13 acre tract and used the well to water his rice crops. There was testimony that the fences around the Broh tract were kept in good repair during the period of time in question and that the property was used each and every year for raising crops or grazing cattle. The owners of the land to the west of the Broh fence never made any claim to the land east of the fence, and Mr. Liere, acting upon the Brohs' instructions, placed "No Trespassing" signs around the perimeters of the Broh property, especially up in the northwest corner. Mrs. Broh made inspections of the land just about every year, and if she noticed that any of the "No Trespassing" signs were missing, she would call the matter to the attention of her tenant.

▮ It was for the jury to determine whether the plaintiffs proved the factual elements of a limitation title under the 10 year statute. *Nelson v. Morris,* 227 S.W.2d 586 (Tex.Civ.App.—Fort Worth 1950, writ ref'd n. r. e.). The fact that the Brohs were unaware of the exact location of their boundary lines and mistakenly believed their boundaries to include the land in controversy did not defeat their claim of having acquired title to the land by peaceable and adverse possession. *Calfee v. Duke,* 544 S.W.2d 640 (Tex.1976). There is evidence that the land within the Brohs' fenced enclosure was used by the Brohs and their tenants as a unit for 10 or more consecutive years. The fence along the west line of the Brohs' enclosure was not merely a "casual" fence under the holding of *Orsborn v. Deep Rock Oil Corp.,* 153 Tex. 281, 267 S.W.2d 781 (1954), even though the evidence did not show who had constructed the fence. *Butler v. Hanson,* 455 S.W.2d 942, 945 (Tex.1970). The evidence supports the jury's finding that the Brohs held peaceable and adverse possession of the land in dispute under a claim of right for the requisite period of time.

The trial court's judgment is affirmed.