Opinion issued April 1, 2004










In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00126-CV




MINH THU TRAN, NORMAN L. ROSER, AND WASHINGTON MUTUAL
BANK, FA, Appellants

V.

WILLIAM MACHA AND NITA MACHA, Appellees




On Appeal from the 164th District Court
Harris County, Texas
Trial Court Cause No. 2001-43727




MEMORANDUM OPINION
          This is an appeal of a jury’s finding that a 20-foot strip of property belongs to
plaintiffs/appellees William and Nita Macha because they were in privity with the
property’s previous owner who had acquired that strip of land via adverse possession.
In two points of error, defendants/appellants Minh Thu Tran, Norman L. Roser, and
Washington Mutual Bank, FA contend that the evidence is legally and factually
insufficient to support a finding of adverse possession. We affirm.
Factual & Procedural Background
          The disputed property is part of a West University subdivision originally
developed and platted in the late 1920s. The lots on the block in question were all
intended to be 50 to 55 feet wide. When the lots were staked, however, they were
staked so that the intended houses themselves would be located 50 feet apart from one
another. This mistake ultimately led to lot 5’s being 70 feet wide instead of 50 feet
wide. The extra 20 feet of land were thought to lie on the east side of the house that
was eventually built on lot 5 and were thought to belong to lot 5’s owner. Actually,
the extra 20 feet lay on the west side of the house built on lot 5. At some point in the
1940s, the original owners of lot 5 built a home and a garage, inadvertently locating
the garage and driveway on part of lot 6, as well as on lot 5.
          In 1970, the Halliburton family bought lot 5 (4136 Case street). At that time,
the Budde family, which was related to the Halliburton family, had been living in the
home on lot 6 (4132 Case street) for about 15 years. The Buddes and the Halliburtons
both treated the garage and driveway as belonging to the Halliburtons. The
Halliburtons used this driveway and garage for their cars for over 20 years, until
Lillian Halliburton stopped driving. At that point, she moved her washer and dryer
into the garage. Pictures of the adjacent lots show that the Buddes built their own
garage and driveway on the east side of their lot, just a few feet away from the
Halliburtons’ driveway. Relations between the two families and their neighbors were
always cordial through the years.



          In 1989, the Machas bought the house on lot 4 and have lived there ever since.
In 1995, Tran and her husband, Roser, bought the Budde family home on lot 6. They
lived there for several years, then moved into a nearby house. They intended to tear
down the house on lot 6 and build a new house there. In the interim, they rented the
house to tenants. The Machas and Tran and Roser were friends, as well as neighbors,
and discussed jointly buying lot 5 from the Halliburtons and splitting the property so
that they would own contiguous extra-large lots. For reasons that are not clear from
the record, Roser and Tran apparently withdrew from the deal and the Machas
purchased lot 5 from Lillian Halliburton in May 2001 without Roser’s and Tran’s
participation. The property disclosure form prepared in anticipation of the sale of lot
5 from the Halliburtons to the Machas indicates that the lot included a free-standing
garage in tear-down condition. 
 
          When the Machas obtained a survey before buying lot 5, they discovered that
lot 5 did not conform to the official platted boundary lines. Therefore, in addition to
securing a general warranty deed conveying all of lot 5 from Lillian Halliburton, the
Machas secured a quitclaim deed conveying any interest in the western 20-foot
portion of lot 6 that Halliburton might have acquired by adverse possession.
          Soon thereafter, the Machas put lot 5 on the market. Because of the additional
width of the property, its value increased by half, from roughly $200,000 to $300,000. 
At about the same time, Roser received a letter from the City of West University
informing him that the garage serving the house built on lot 5 was a hazard and, as
the owner/taxpayer of lot 6, he needed to demolish or repair the garage. When they
discovered that the garage and driveway everyone had thought was part of lot 5 was
actually part of their lot—lot 6—Roser and Tran laid claim to it, obtained a fence
permit from West University, and fenced it off. 
          The Machas filed a trespass to try title suit; they sought a temporary restraining
order to prevent Roser and Tran from tearing down the garage, and they sought to
remove the new fence. Pending a legal resolution of the dispute, the Machas took lot
5 off the market. Roser and Tran counterclaimed, seeking declaratory relief and
removal of cloud on their title.
          The jury was asked only one question: 
Have WILLIAM MACHA and NITA MACHA and their
predecessors in privity of estate under whom they claim held the
Property in question in peaceable and adverse possession and cultivated,
used or enjoyed the Property in question for any period of at least ten
years prior to August 24, 2001?
 
“PRIVITY OF ESTATE” means a transfer and delivery of
possession from one possessor to the next.
 
“PROPERTY” means the westerly twenty feet of Lot 6, Block 26,
Colonial Terrace, Section C, an Addition in Harris County, Texas.
 
“PEACEABLE POSSESSION” means possession of real property
that is continuous and not interrupted by a lawsuit to recover the
property.
 
“ADVERSE POSSESSION” means an actual and visible
appropriation of real property, commenced and continued under a claim
of right that is inconsistent with and is hostile to the claim of another
person.

The jury unanimously answered, “Yes.” The trial court awarded full title and
possession to the Machas, and the parties bore their own attorney’s fees. Roser and
Tran filed a motion for judgment notwithstanding the verdict, which the trial court
denied, and a motion for new trial that was overruled by operation of law.
Analysis
          In two related points of error, Roser and Tran contend that the evidence is
legally and factually insufficient to support the jury’s finding that the Machas
adversely possessed part of lot 6.


 
          Standard of Review
          In a no-evidence, legal sufficiency review, we must consider only the evidence
and inferences from evidence that support the trial court’s findings and must
disregard all evidence and inferences to the contrary. Heldenfels Bros. Inc. v. City of
Corpus Christi, 832 S.W.2d 39, 41 (Tex. 1992). In a factual sufficiency review, we
will set aside the verdict only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986).
          Adverse Possession
          Adverse possession is defined as “an actual and visible appropriation of real
property, commenced and continued under a claim of right that is inconsistent with
and is hostile to the claim of another person.” Tex. Civ. Prac. & Rem. Code Ann.
§ 16.021(1) (Vernon 2002); Rhodes v. Cahill, 802 S.W.2d 643, 645 (Tex. 1990). A
person must bring suit no later than 10 years after the day the cause of action accrues
to recover real property held in peaceable and adverse possession by another who
cultivates, uses, or enjoys the property. Tex. Civ. Prac. & Rem. Code Ann. § 16.026
(Vernon 2002). In other words, if the Halliburtons adversely possessed the disputed
strip of property, then the Machas possess it because they are in privity with the
Halliburtons.
          It is simply not disputed that everyone believed the Halliburtons owned the
garage and driveway that were built in part on lot 6, which they did not own and on
which they did not pay taxes, and used the garage and driveway continuously for at
least 15 years. This fact alone constitutes legally and factually sufficient evidence to
sustain the jury’s finding. 
          The crux of Roser and Tran’s challenge, both at trial and on appeal, rests on a
fundamentally incorrect interpretation of the law of adverse possession. As they
define adverse possession, the possession here could not have been adverse because
it was not “hostile,” i.e., the possession of the 20-foot strip was accidental, not
intentional, and relations between the Halliburtons and the Buddes at the time the
land was being adversely possessed were harmonious and cordial. 
          The true meaning of “hostile” in the context of adverse possession refers to
whether the claim is inconsistent with the rights of the true owner, not to whether the
parties themselves are hostile to one another personally. See Taub v. Houston
Pipeline Co., 75 S.W.3d 606, 625 (Tex. App.—Texarkana 2002, pet. denied) (noting
that claim is hostile when acts performed by claimant and use made of land are of
nature and character that would reasonably notify true owner of adverse claim). 
There is no authority to suggest a meaning other than this, nor is there any legal
requirement that personal animosity be present.
          The law is also well settled that adverse possession need not be intentional, so
long as it is “visible, open, and notorious.” See Calfee v. Duke, 544 S.W.2d 640, 642
(Tex. 1976) (holding that claim of adverse possession not defeated by claimant’s lack
of knowledge that there could be other claimants for the land); accord King v. Inwood
N. Assocs., 563 S.W.2d 309, 312 (Tex. App.—Houston [1st Dist.] 1978, no writ)
(noting fact that adverse possessors’ mistaken belief that they owned land in
controversy did not defeat claim). Both the garage and the driveway constituted an
entirely visible use of lot 6 from the time they were mistakenly built on part of 6, and
were used continually for more than 10 years. However unintentional, this open and
continuous use of 20 feet of lot 6 for more than 10 years by the owners of lot 5 in
ways inconsistent with the use and enjoyment of the 20-foot strip by the true owners,
as if that portion of lot 6 belonged to the owners of lot 5, satisfies the definition of
“adverse possession.” Accordingly, we overrule both points of error.
          We affirm the judgment of the trial court.
 
                                                             Evelyn V. Keyes
                                                             Justice

Panel consists of Justices Nuchia, Jennings, and Keyes.