Opinion issued October 28, 2004










In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00126-CV




MINH THU TRAN, NORMAN L. ROSER, AND WASHINGTON MUTUAL
BANK, FA, Appellants

V.

WILLIAM MACHA AND NITA MACHA, Appellees




On Appeal from the 164th District Court
Harris County, Texas
Trial Court Cause No. 2001-43727




OPINION ON MOTION FOR REHEARING
          We issued our memorandum opinion in this case on April 1, 2004. Appellants
filed a motion for rehearing on April 16, 2004. We deny the motion for rehearing, but
withdraw our original opinion and substitute this in its stead so that we may more
explicitly address whether adverse possession can occur following a mutual mistake
regarding boundary lines. We decline, however, to address the constitutional
argument raised in the motion for rehearing. See Pfiger v. Nacogdoches County Cent.
Appraisal Dist., 45 S.W.3d 159, 166 (Tex. App.—Tyler 2000, pet. denied) (“A
motion for rehearing does not afford a party an opportunity to raise new issues.”).
          This is an appeal of a jury’s finding that a 20-foot strip of property belongs to
plaintiffs/appellees William and Nita Macha because they were in privity with the
property’s previous owner who had acquired that strip of land via adverse possession.
In two points of error, defendants/appellants Minh Thu Tran, Norman L. Roser, and
Washington Mutual Bank, FA contend that the evidence is legally and factually
insufficient to support a finding of adverse possession. We affirm.
Factual & Procedural Background
          The disputed property is part of a West University subdivision originally
developed and platted in the late 1920s. The lots on the block in question were all
intended to be 50 to 55 feet wide. When the lots were staked, however, they were
staked so that the intended houses themselves would be located 50 feet apart from one
another. This mistake ultimately led to lot 5’s being 70 feet wide instead of 50 feet
wide. The extra 20 feet of land were thought to lie on the east side of the house that
was eventually built on lot 5 and were thought to belong to lot 5’s owner. Actually,
the extra 20 feet lay on the west side of the house built on lot 5. At some point in the
1940s, the original owners of lot 5 built a home and a garage, inadvertently locating
the garage and driveway on part of lot 6, as well as on lot 5.
          In 1970, the Haliburton family bought lot 5 (4136 Case street). At that time,
the Budde family, which was related to the Haliburton family, had been living in the
home on lot 6 (4132 Case street) for about 15 years. The Buddes and the Haliburtons
both treated the garage and driveway as belonging to the Haliburtons. The
Haliburtons used this driveway and garage for their cars for over 20 years, until
Lillian Haliburton stopped driving. At that point, she moved her washer and dryer
into the garage. Pictures of the adjacent lots show that the Buddes built their own
garage and driveway on the east side of their lot, just a few feet away from the
Haliburtons’ driveway. Relations between the two families and their neighbors were
always cordial through the years.



          In 1989, the Machas bought the house on lot 4 and have lived there ever since.
In 1995, Tran and her husband, Roser, bought the Budde family home on lot 6. They
lived there for several years, then moved into a nearby house. They intended to tear
down the house on lot 6 and build a new house there. In the interim, they rented the
house to tenants. The Machas and Tran and Roser were friends, as well as neighbors,
and discussed jointly buying lot 5 from the Haliburtons and splitting the property so
that they would own contiguous extra-large lots. For reasons that are not clear from
the record, Roser and Tran apparently withdrew from the deal and the Machas
purchased lot 5 from Lillian Haliburton in May 2001, without Roser’s and Tran’s
participation. The property disclosure form prepared in anticipation of the sale of lot
5 from the Haliburtons to the Machas indicates that the lot included a free-standing
garage in tear-down condition. 
          When the Machas obtained a survey before buying lot 5, they discovered that
lot 5 did not conform to the official platted boundary lines. Therefore, in addition to
securing a general warranty deed conveying all of lot 5 from Lillian Haliburton, the
Machas secured a quitclaim deed conveying any interest in the western 20-foot
portion of lot 6 that Haliburton might have acquired by adverse possession.
          Soon thereafter, the Machas put lot 5 on the market. Because of the additional
width of the property, its value increased by half, from roughly $200,000 to $300,000. 
At about the same time, Roser received a letter from the City of West University
informing him that the garage that was serving the house built on lot 5 was a hazard
and that, as the owner/taxpayer of lot 6, he needed to demolish or repair it. When
they discovered that the garage and driveway everyone had thought were part of lot
5 were recorded as part of their lot—lot 6—Roser and Tran laid claim to that portion
of the lot, obtained a fence permit from West University, and fenced it off. 
          The Machas filed a trespass to try title suit; they sought a temporary restraining
order to prevent Roser and Tran from tearing down the garage, and they sought to
remove the new fence. Pending a legal resolution of the dispute, the Machas took lot
5 off the market. Roser and Tran counterclaimed, seeking declaratory relief and
removal of cloud on their title.
          The jury was asked only one question: 
Have WILLIAM MACHA and NITA MACHA and their
predecessors in privity of estate under whom they claim held the
Property in question in peaceable and adverse possession and cultivated,
used or enjoyed the Property in question for any period of at least ten
years prior to August 24, 2001?
 
“PRIVITY OF ESTATE” means a transfer and delivery of
possession from one possessor to the next.
 
“PROPERTY” means the westerly twenty feet of Lot 6, Block 26,
Colonial Terrace, Section C, an Addition in Harris County, Texas.
 
“PEACEABLE POSSESSION” means possession of real property
that is continuous and not interrupted by a lawsuit to recover the
property.
 
“ADVERSE POSSESSION” means an actual and visible
appropriation of real property, commenced and continued under a claim
of right that is inconsistent with and is hostile to the claim of another
person.

The jury unanimously answered, “Yes.” The trial court awarded full title and
possession to the Machas, and the parties bore their own attorney’s fees. Roser and
Tran filed a motion for judgment notwithstanding the verdict, which the trial court
denied, and a motion for new trial that was overruled by operation of law.
Analysis
          In two related points of error, Roser and Tran contend that the evidence is
legally and factually insufficient to support the jury’s finding that the Machas
adversely possessed part of lot 6.


 
          Standard of Review
          In a no-evidence, legal sufficiency review, we must consider only the evidence
and inferences from evidence that support the trial court’s findings and must
disregard all evidence and inferences to the contrary. Heldenfels Bros. Inc. v. City of
Corpus Christi, 832 S.W.2d 39, 41 (Tex. 1992). In a factual sufficiency review, we
will set aside the verdict only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986).
          Adverse Possession
          Adverse possession is defined as “an actual and visible appropriation of real
property, commenced and continued under a claim of right that is inconsistent with
and is hostile to the claim of another person.” Tex. Civ. Prac. & Rem. Code Ann.
§ 16.021(1) (Vernon 2002); Rhodes v. Cahill, 802 S.W.2d 643, 645 (Tex. 1990). A
person must bring suit no later than 10 years after the day the cause of action accrues
to recover real property held in peaceable and adverse possession by another who
cultivates, uses, or enjoys the property. Tex. Civ. Prac. & Rem. Code Ann. § 16.026
(Vernon 2002). Thus, if the Haliburtons adversely possessed the disputed strip of
property, then the Machas possess it because they are in privity with the Haliburtons. 
See Parker v. McGinnes, 842 S.W.2d 357, 360 (Tex. App.—Houston [1st Dist.] 1992,
writ denied). (noting that adverse possession does not have to continue in same
person if there is privity of estate between each holder and his successor).
          It is not disputed that the Haliburtons built a driveway and garage on part of lot
6, owned by the Buddes, instead of their own lot, and that everyone believed the
Haliburtons owned the garage and driveway built on part on lot 6, which they did not
own and on which they did not pay taxes. Nor is it disputed that the Haliburtons used
the garage and driveway continuously for at least 15 years, in derogation of the
Buddes’ right to the land, and that the Machas were in privity with the Haliburtons
as possessors of the land. These facts alone constitute legally and factually sufficient
evidence to sustain the jury’s finding. 
          The crux of Roser and Tran’s challenge, both at trial and on appeal, rests on a
fundamentally incorrect interpretation of the law of adverse possession. As they
define adverse possession, the possession here could not have been adverse because
it was not “hostile,” i.e., the possession of the 20-foot strip was accidental, not
intentional, and relations between the Haliburtons and the Buddes at the time the land
was being adversely possessed were harmonious and cordial. 
          The true meaning of “hostile” in the context of adverse possession refers to
whether the claim is inconsistent with the rights of the true owner, not to whether the
parties themselves are hostile to one another personally. See Taub v. Houston
Pipeline Co., 75 S.W.3d 606, 625 (Tex. App.—Texarkana 2002, pet. denied) (noting
that claim is hostile when acts performed by claimant and use made of land are of
nature and character that would reasonably notify true owner of adverse claim). 
There is no authority to suggest a meaning other than this; nor is there any legal
requirement that personal animosity be present.
          The law is also well settled that adverse possession need not be intentional, so
long as it is “visible, open, and notorious.” See Calfee v. Duke, 544 S.W.2d 640, 642
(Tex. 1976) (holding claim of adverse possession not defeated by claimant’s lack of
knowledge that there could be other claimants for the land); accord King v. Inwood
N. Assocs., 563 S.W.2d 309, 312 (Tex. App.—Houston [1st Dist.] 1978, no writ)
(noting fact that adverse possessors’ mistaken belief that they owned land in
controversy did not defeat claim). In their motion for rehearing, Roser and Tran
contend that adverse possession cannot result from a mutual mistake regarding the
boundary lines of a property, relying on authority that requires the adverse claim to
be plain and positive. In particular, Roser and Tran rely on Ellis v. Jansing, 620
S.W.2d 569, 571-72 (Tex. 1981), to support their proposition. This case, however,
does no more than reiterate the definition of adverse possession. Roser and Tran
appear to be importing into the definition of adverse possession a scienter
requirement, i.e., the possession may be open, and it may be adverse to another’s
claim of right, but unless the possessor knows it is adverse to another’s claim there
can be no adverse possession. We cannot agree. It is the Haliburtons’ acts of
building the driveway and garage, using them openly and continuously for more than
15 years as their own, in derogation of the Buddes’ right to use that land, and
conveying them to the Machas that were adverse to the Buddes’ title, regardless of
the Haliburtons’ conscious intent to deprive the Buddes of title to the land so used.
          In their response to the motion for rehearing, the Machas provided additional
authority to support the proposition that adverse possession may indeed occur despite
a mutual mistake about property boundary lines. See Julian v. Baker, 758 S.W.2d
873, 876-77 (Tex. App.—Houston [14th Dist.] 1988, writ denied) (claim of right
cannot be defeated by lack of knowledge of error in land survey); Yates v. Hogstrom,
444 S.W.2d 851, 852-53 (Tex. Civ. App.—Houston [14th Dist.] 1969, no writ)
(noting that adverse possession my be found regardless of whether claimant was
mistaken as to location of boundary line—“a line may be established as a true
boundary line of a tract of land by recognition and acquiescence in the line as the true
line by all interested parties for a sufficient length of time”); Boyle v. Burk, 749
S.W.2d 264, 266 (Tex. App.—Fort Worth 1988, writ. denied) (knowledge that 
claimed property is that of another is not a prerequisite of adverse possession; it is
only necessary that claimant thought he was rightful owner and had no competition
for ownership, coupled with actual and visible possession and use); Fish v. Bannister,
759 S.W.2d 714, 718 (Tex. App.—San Antonio 1988, no writ) (holding contention
that claimants could not formally intend to claim land unless they knew such land was
not part of their title was without merit). 
          We hold that the property under dispute here was adversely possessed, despite
the mutual mistake regarding the property lines. Both the garage and the driveway
constituted an entirely visible use of lot 6 from the time they were mistakenly built
on part of 6, and they were used continually by the Haliburtons for more than 15
years, then by the Machas. This open and continuous use of 20 feet of lot 6 for more
than 15 years by the owners of lot 5 in ways inconsistent with the use and enjoyment
of the 20-foot strip by the true owners, as if that portion of lot 6 belonged to the
owners of lot 5, satisfies the definition of “adverse possession.” The line was
established as a true boundary line of this tract of land “by recognition and
acquiescence in the line as the true line by all interested parties for a sufficient length
of time.” See Yates, 444 S.W.2d at 853. 
          We overrule both points of error.
 
          We affirm the judgment of the trial court.
 
 
                                                             Evelyn V. Keyes
                                                             Justice

Panel consists of Justices Nuchia, Jennings, and Keyes.

Justice Jennings, dissenting.