# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-10-00299-CV

Bobby Green, Appellant

v.

Donald R. Flournoy, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
NO. D-1-GN-08-000968, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Bobby Green appeals from the trial court's judgment in this dispute arising from competing claims to an area of land along the boundary between the parties' residential lots (the "disputed area"). Based on the jury's findings, the trial court awarded appellee Donald R. Flournoy title to the disputed area. On appeal, Green argues that Flournoy waived any adverse-possession defense and that the evidence was legally and factually insufficient to support the jury's finding that Flournoy adversely possessed that portion of the disputed area falling within Green's property line. We affirm the trial court's judgment.

## BACKGROUND

In 1978, Flournoy purchased tract 28 of the C.A. Hamilton Subdivision in Austin ("Lot 28").[1] Flournoy has never lived on Lot 28, but has continuously leased the property to tenants.

---

[1] The facts recited herein are from the testimony and exhibits admitted at trial.

In 1990, Green bought tracts 23 and 25 of the same subdivision ("Lots 23 & 25"). The original subdivision plat, made in 1943, indicated that Lot 23 is directly west of Lot 25 and that Lots 23 and 25 are 42 feet deep and 95.5 feet wide.[2] Lot 27, owned by Green's sister, abuts the northern half of Lot 25's eastern boundary, while Flournoy's Lot 28 abuts the southern half of Lot 25's eastern border. The subdivision plat indicates that Lots 27 and 28 are both 84 feet deep and 47 feet wide and are bordered on the east side by Montopolis Drive. It is undisputed that the subdivision block as it appears today is approximately 40 feet shorter east to west than the subdivision plat indicated. As a result, Green's and Flournoy's property claims for Lots 25 and 28 overlap by an area approximately 40 feet deep (the disputed area). During the course of the property-line dispute, three surveys were done attempting to identify the boundary between Lot 25 and Lot 28. Green commissioned Paul Pflugal, an employee of Landmark Surveying, to complete the first survey in 2003 (the "Landmark Survey"). The Landmark Survey indicated that all 40 feet of the disputed area fell within Green's Lot 25. Flournoy commissioned Thomas Dixon to do a second survey (the "Dixon Survey"), in which Dixon found that all 40 feet of the disputed area fell within Flournoy's Lot 28.[3] Green then commissioned a third survey, performed by Anne Thayer on behalf of Holt Carson, Inc., that determined that the property line was roughly halfway between the property lines indicated by the Landmark and Dixon Surveys (the "Holt Carson Survey").

_____

[2] Depth in this context refers to the lot's distance east to west. Width refers to the lot's distance north to south.

[3] Though Dixon performed this survey on behalf of his employer, Waterloo Surveyors, we will use the terminology reflected in the jury charge and refer to this survey as the Dixon Survey.

Green initiated suit in 2008, making claims of trespass to try title, trespass, nuisance, conversion, and adverse possession and requesting injunctive relief, monetary damages, and a declaratory judgment identifying the boundary line between Lots 25 and 28. Flournoy responded, citing the affirmative defense of adverse possession and making a counterclaim requesting a declaration that the property line be as shown on the Dixon Survey.

A jury trial was held in which Green, Flournoy, Pflugal, Dixon, and Thayer testified.[4] Each surveyor testified regarding why they believed their property-line determination was correct. Green testified that he built a chain-link fence separating the remainder of his property from the disputed area in the early 1990s to prevent transients from cutting across his land. He testified that, since purchasing Lot 25, he had maintained the property on both sides of his fence, including the disputed area, by mowing the lawn, trimming the trees, and adding "fill" to low areas to promote better drainage. Green also testified that after Pflugal conducted his survey, Green erected fence posts on the Landmark Survey's property line but that Flournoy cut the fence posts down. Flournoy entered a photo into evidence showing that the fence posts were placed directly against Lot 28's house, and that, had Green built the fence, Flournoy's tenants would be unable to use the back door of the residence.

Flournoy presented evidence that his deed for Lot 28 conveyed "Tract No. 28 . . . according to a map or plat of [the C.A. Hamilton subdivision] . . . which Tract 28 was conveyed to Ernestine Kinser by Warranty Deed . . . save and except for 176 square feet of said tract conveyed by Ernestine Kinser to the City of Austin . . . ." Flournoy further testified that the deed conveying

---

[4] Both Green's and Flournoy's attorneys also testified regarding reasonable and necessary attorney's fees.

3

Lot 28 to Ernestine Kinser, a former owner of the property, contained a metes and bounds description providing that Lot 28 was 84 feet deep and 42 feet wide and that because Kinser sold 176 square feet to the City of Austin,[5] Lot 28 was now 80 feet deep and 42 feet wide. Flournoy testified that when he bought the property in 1978, he intended to occupy the entire 80 by 42 feet tract and has not abandoned any portion of the property since. He also testified that, since 1978, his tenants have occupied all of the 80 by 42 feet lot, including the disputed area. Flournoy testified that over the past 30 years, his tenants have used the disputed area to park their cars, dry their clothes, and store personal items. He testified that because the house is small, tenants spend a lot of time in the disputed area and they have put picnic tables, children's swing sets, and dog houses on the disputed area in the past. Flournoy entered photographs of the disputed area into evidence showing how Lot 28's resident at the time of trial used the property. The photos show several items of lawn furniture on the disputed area, including a table, six chairs, and a swing. A van was also parked within the disputed area.

Additionally, Flournoy introduced a 1982 tax document indicating that he paid property taxes on 84 by 42 feet of land. Green introduced a contradicting tax document from the Travis Central Appraisal District indicating that in 2008, Lot 28 was described as 46 by 47 feet. Flournoy testified that as soon as the appraisal district's error was brought to his attention, Flournoy worked with them to get the error corrected. Flournoy testified that taxing authorities changed the dimensions of the property to 80 by 42 feet after Flournoy pointed out the mistake.

---

[5] This fact is undisputed.

At the close of Flournoy's evidence, Green moved for a partial directed verdict arguing that there was no evidence of adverse possession. The trial court denied Green's motion and submitted three questions to the jury. The first question asked the jury which boundary line it found to be true and correct. The question gave the jury the option of choosing Landmark's, Holt Carson's, or Dixon's property line. The jury found Holt Carson's property line, which placed approximately 20 feet of the disputed area in Lot 25 and 20 feet in Lot 28, to be the correct property boundary.

The second question read as follows:

Has Donald R. Flournoy peaceably and adversely possessed the property located on Bobby Green's side of the boundary line found by you in your answer to Question No. 1 by:

   a.   cultivating, using or enjoying the property continuously and to the exclusion of all others since at least March 24, 1998; or
   b.   (1) cultivating, using or enjoying the property; (2) paying the applicable taxes on the property; and (3) claiming the property under a duly registered deed since at least March 24, 2003; or
   c.   holding in good faith and under a deed purporting to convey the property that is recorded in the real property records of Travis County, Texas since at least March 24, 1983?

Donald R. Flournoy's possession is "peaceable" if it is continuous and not interrupted by an adverse suit to recover the property.

Donald R. Flournoy's possession is "adverse" if it was: (1) actual; (2) visible; (3) continuous; (4) notorious; (5) distinct; (6) hostile; and (7) of such a character as to indicate unmistakably an assertion of a claim of exclusive ownership of the property on Bobby Green's side of the respective boundary line. Donald R. Flournoy's possession is "hostile" if it is done with the intention of claiming the property as his own, to the exclusion of all others.

The language of question two correlates with the 5-, 10-, and 25-year adverse possession statutes.

*See* Tex. Civ. Prac. & Rem. Code Ann. §§ 16.025 (5-year), .026 (10-year), .027 (25-year) (West

5

2002). Green submitted written objections to the jury charge during the charge conference urging that the evidence of adverse possession was insufficient to present the issue to the jury. The trial court overruled these objections. The jury answered question two in the affirmative.

Finally, the jury was asked to determine a reasonable and necessary fee for Green's attorney. The jury found $45,000 in reasonable and necessary attorney's fees for preparation and trial, $12,500 for an appeal to this Court, and $2,500 for an appeal to the Texas Supreme Court.

Following the jury's verdict, Green filed a motion for judgment notwithstanding the verdict urging that there was no evidence or insufficient evidence of adverse possession. The trial court denied Green's motion and entered judgment on the jury's verdict, vesting Flournoy with title to all of the disputed area but declining to award attorney's fees to either party.[6] Green did not file a motion for new trial and now appeals.

**STANDARD OF REVIEW**

We review the grant or denial of a motion for judgment notwithstanding the verdict under a legal-sufficiency standard, crediting evidence favoring the jury verdict if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005)). Green was entitled to judgment notwithstanding the verdict if the record shows: (1) a complete lack of evidence of a vital fact; (2) the trial court is barred by the rules of law

---

[6] Title to approximately 20 feet of the disputed area was vested in Flournoy as a result of the jury's determination that that section of the disputed area lay within Flournoy's property line. Title to the remainder of the disputed area was vested in Flournoy as a result of the jury's affirmative finding of adverse possession.

6

or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is not more than a scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *City of Keller*, 168 S.W.3d at 810.

On appeal, Green also raises a factual-sufficiency challenge. Flournoy contends, however, that Green failed to properly preserve this issue. A factual sufficiency point of error must be preserved with a motion for new trial. *See* Tex. R. Civ. P. 324(b). Though Green did not move for a new trial, he alleges that his motion for judgment notwithstanding the verdict, motion for a directed verdict, and objections to the jury charge acted to preserve his factual-sufficiency arguments. In Green's motion for a directed verdict and objections to the jury charge, he argued only that there was no evidence to support Flournoy's adverse possession defense and that Flournoy could not, as a matter of law, establish the necessary elements. This is a challenge to the legal sufficiency of the evidence, not the factual sufficiency. *See City of Keller*, 168 S.W.3d at 810. Though Green, in his motion for judgment notwithstanding the verdict, requested that the court set aside the jury's verdict because there was "no evidence or insufficient evidence" to support the jury's finding, Green admits that the substance of this motion is the same as his motion for a directed verdict and that "large portions of each of these pleadings were taken from the previous pleading and simply given a new title." Nowhere in his motion for judgment notwithstanding the verdict does Green claim that the jury verdict was against the great weight of the evidence, nor does he present any new challenges to the jury's verdict not included in his previous legal-sufficiency arguments. For this reason, Green failed to preserve his factual-sufficiency challenge.

7

**DISCUSSION**

On appeal, Green contests the trial court's denial of his motion for judgment notwithstanding the verdict on the grounds that: (1) Flournoy waived any claim of adverse possession in open court, (2) the evidence was insufficient to prove that Flournoy was holding the disputed area "under title or color of title," and (3) the evidence was insufficient to prove the elements necessary to prevail on his adverse possession defense. Green also argues that, in the event that we reverse the trial court's finding of adverse possession, the issue of attorney's fees should be remanded to the trial court. Green does not challenge the jury's boundary-line determination.

*Waiver*

In Green's first issue on appeal, he contends that Flournoy waived any claim of adverse possession in open court when Flournoy answered "no" to the question "Have you ever intended to occupy any property other than that described on your deed for Lot 28?" Green argues that this admission constitutes a waiver based on Texas Rule of Civil Procedure 11, which provides, "Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless . . . it be made in open court and entered of record." Tex. R. Civ. P. 11. In the alternative, Green claims that Flournoy's statement constitutes a judicial admission. A judicial admission must be "a clear, deliberate, and unequivocal statement . . . [that] occurs when an assertion of fact is conclusively established in live pleadings." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000).

In characterizing Flournoy's testimony as a waiver of any adverse-possession defense, Green ignores the context in which the quoted statement was made. The relevant line of questioning is as follows:

8

Q: [B]y and through any method, your renters or otherwise, have you ever intended to occupy any property other than that described on your deed?

A: I always intended to occupy the property that I purchased, which I believe to be 42 feet [wide] by 80 feet deep from the property points.

Q: And would that be as it's described in your deed?

A: I think my deed says — has it listed as Lot 28, and it makes reference to a deed that has a metes and bounds description, which gives the distance of the lot, its width and its depth. Is that your question?

Q: Well, I'm actually just looking for a yes or a no.

. . . .

A: Well, the answer is yes, I intended to occupy things that I received by virtue of the — of the warranty deed. Is that your question?

Q: Well, let's try it once more. I'm just looking for a yes or a no here. Have you ever intended to occupy any property other than that described on your deed for Lot 28?

A: No.

It is clear from his testimony that Flournoy believed that his deed for Lot 28 included the disputed area. Therefore the statement cited by Green, when viewed in context, is neither an admission that Flournoy did not intend to occupy the disputed area nor an agreement between the parties to eliminate Flournoy's adverse-possession defense. Green's first point on appeal is overruled.

*Sufficiency of Evidence: Color of Title*

Green's second point on appeal challenges the legal and factual sufficiency of the evidence "that Flournoy was holding or using the Disputed Area 'under title or color of title.'" For the reasons outlined above, we will only address Green's legal-sufficiency argument. Though Green

9

purports to challenge the trial court's finding of "title or color of title," these are defined terms within chapter 16 of the civil practice and remedies code, *see* Tex. Civ. Prac. & Rem. Code Ann. § 16.021(2), (4) (West 2002), and are not required elements of the 5-, 10-, or 25-year adverse possession statutes. *See id.* §§ 16.025 (5-year), .026 (10-year), .027 (25-year). The substance of Green's argument instead relates to the sufficiency of the evidence proving that Flournoy claimed the property under a "duly registered deed," as required by the 5-year adverse possession statute or a "deed or instrument of record" as required by the 25-year statute. *Id*. §§ 16.025, .027.

Green seems to argue that, because the jury determined that roughly half the disputed area lies within the boundary of his Lot 25, the deed to Lot 28 could not have attempted to convey that portion of the disputed area found to be a part of Lot 25, because the "jury's determination of the boundary constitutes a finding that Flournoy did not have title to the property beyond that boundary." However, the jury's determination that a portion of the disputed area fell within Lot 25 does not mean that Flournoy's deed could not have also purported to convey the disputed area to Flournoy as a part of Lot 28. In fact, evidence was presented suggesting that the deeds to both Lot 25 and Lot 28 included the disputed area. Flournoy entered his deed, which is on record in Travis County, into evidence. The deed conveyed Lot 28 to Flournoy "according to a map or plat" of the C.A. Hamilton Subdivision, and as previously "conveyed to Ernestine Kinser by Warranty Deed." Flournoy further presented evidence that both the subdivision plat and the deed conveying Lot 28 to Kinser identified Lot 28 as 84 by 42 feet. Kinser later sold a four-feet-deep section of Lot 28 to the city of Austin. Therefore, Flournoy testified, his deed conveyed a tract of land that was 80 feet deep and 42 feet wide. This constitutes more than a scintilla of evidence that Flournoy's deed to Lot 28 included the disputed area. We overrule Green's second point on appeal.

*Sufficiency of Evidence: Adversity*

In his third point on appeal, Green contends that the evidence is factually and legally insufficient to prove that Flournoy's possession of that portion of the disputed area on Green's side of the property line was adverse, as required by the 5-, 10-, and 25-year adverse possession statutes. *See id.* §§ 16.025, .026, .027. Because Green did not object to the definition of "adverse" presented to the jury, we will affirm the judgment if there is legally-sufficient evidence to prove adversity as defined by the jury charge.[7] *See Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 221 (Tex. 2005) ("The sufficiency of the evidence must be measured by the jury charge when, as here, there has been no objection to it."). The jury charge stated that possession was adverse if it was: (1) actual; (2) visible; (3) continuous; (4) notorious; (5) distinct; (6) hostile; and (7) of such a character as to indicate unmistakably an assertion of a claim of exclusive ownership of the property on Green's side of the respective boundary line.

Flournoy testified that he intended to occupy the entire 80 by 42 feet tract and had not abandoned any portion of that property. He also testified that, to his knowledge, his tenants have occupied all of the 80 by 42 feet property as well. Flournoy explained that his tenants commonly dried their clothes, parked their cars, and placed furniture in the disputed area. Flournoy further testified that tenants could not exit the back door of the house without entering into the disputed area and that tenants frequently use the disputed area as a back yard. He also presented photographs that showed a parked van, lawn furniture, and drying clothes in the disputed area.

---

[7] Though Green made several other objections to the charge, the definition of adverse was not disputed.

Flournoy testified that he believed he owned the disputed area and that until the Landmark Survey was done, Green never challenged Flournoy's tenants' use of the disputed area. Flournoy further testified that when he learned of the property dispute, he erected "no trespassing" signs to be seen from the disputed area to keep Green and others off of the property. Finally, Flournoy testified that, to his knowledge, he paid taxes on 84 by 42 feet of property, and that, when it was brought to his attention that the dimensions of his taxed property had been reduced, he contacted taxing authorities, corrected the error, and at the time of trial was taxed for 80 by 42 feet of land.

This testimony regarding Flournoy's tenants' intent and practice of occupying the entire disputed area through placement of personal property in plain view provides at least some evidence that Flournoy's possession through his tenants was actual, visible, continuous, notorious, distinct, hostile, and of such a character as to indicate unmistakably an assertion of a claim of exclusive ownership.

Green contends that Flournoy cannot claim continuous, adverse possession through his tenants because he did not admit any of his landlord-tenant contracts into evidence. Green cites case law holding that an adverse possession claimant may only claim continuous possession through a tenant to the extent of the lease contract. *See Weems v. Hawkins*, 278 S.W.2d 439, 441-42 (Tex. Civ. App.—Amarillo 1954, writ ref'd n.r.e.). A claimant does not need contractual evidence, however, where "an understanding exists between the landlord and tenant that the tenant will hold certain premises under the lease arrangement." *King v. Inwood N. Assocs.*, 563 S.W.2d 309, 312 (Tex. Civ. App.—Houston [1st Dist.] 1978, no writ). Flournoy's testimony that he believed the disputed area fell within Lot 28, that his tenants intended to occupy the disputed area, and that his tenants did in fact occupy the disputed area on a regular basis is at least some evidence that

12

Flournoy and his tenants had an understanding that his tenants would occupy the disputed area under their leases.

Though Green's testimony contradicted Flournoy's regarding certain elements of adverse possession, as the trier of fact, the jury was free to evaluate the credibility of the witnesses and to resolve the conflicting testimony in favor of Flournoy. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). We overrule Green's third point on appeal.

*Attorney's Fees*

In his fourth point on appeal, Green asks that, in the event that we reverse the finding of adverse possession, the issue of attorney's fees be remanded to the trial court for reconsideration. Because we affirm the trial court's judgment, we overrule Green's fourth point on appeal.

### CONCLUSION

Having overruled all of Green's issues on appeal, we affirm the trial court's judgment.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed: August 5, 2011

13